# ORANGE COUNTY,

## MARCH TERM, 1870.

[CONTINUED FROM PAGE 760 OF VOL. 42.]

---

ALEXANDER MCLANE, ADMINISTRATOR OF JESSE JOHNSON, *v.* J. AND R. C. JOHNSON.

### [IN CHANCERY.]

*Fraudulent Conveyance. Trusts. Chancery. Evidence. Witness. Creditors. Administrators.*

A fraudulent and deceitful conveyance of property, without valuable consideration, and with intent to avoid the right, debt, or duty of any other person, is invalid as to subsequent creditors as well as those who were creditors at the time of the conveyance.

And the conveyance in this case made by the orator's intestate to the defendants, in 1841, without consideration, to avoid attachment by certain persons and no others, the defendants participating in the fraud and now holding the record title, was *held* fraudulent within the meaning of our statute against fraudulent conveyances; and the assets of the estate of the intestate being insufficient, exclusive of his alleged interest in the property conveyed, to pay the debts provable against the estate, all which accrued subsequently to said conveyance, it was *held* that the orator as administrator may maintain this suit in chancery for the recovery of the premises conveyed.

This is not a case of *trust*, between the parties to the transaction, to be set up and enforced by the *cestui que trust* or his representatives. It is a question of *fraud* by reason of a secret trust with fraudulent intent, as affecting the validity of the conveyance, and such intent may be proved by any kind of evidence by which fraud in any other case may be proved. When that is proved, there ensues whatever of trust relation there may be; but such relation is practically regarded only with the view of preserving the symmetry of the legal theory in making out the proper destination of the property, in order to answer the rights, equities, and duties of all parties interested.

In cases of conveyance with intent to delay or hinder creditors, the fraud works the invalidity, in whatever way such fraud may be proved; as in cases of voluntary settlements on *good* consideration as distinguished from *valuable*, by a person insolvent, or indebted to such an extent that such settlement deprived him of the means necessary to pay his existing indebtedness.

Under a levy of execution upon land, where the title of record is in a fraudulent grantee, resort may be had to the court of chancery to perfect and clear the title.

A conversation had just prior to making said conveyance, between the intestate and a friend, in respect to the former's fears that his property might be attached, and as to what he had better do, and in which conversation the friend advised him to do just what he did afterwards do, and *held* admissible, as bearing on the question of his intent in making the conveyance; and as tending to show the incipient stage of a transaction to which the other evidence in the case shows that the defendants became volunteer co-operating parties.

McLane, administrator, v. Johnson et al.

In respect to matters that had transpired *before* the appointment of the administrator, the defendants were not competent to testify as witnesses; as to matters *subsequent*, they were competent. Gen. Sts., 327, § 24.

BILL IN CHANCERY. This suit was brought to recover certain real estate which the orator's intestate conveyed to the defendants in 1841. The bill proceeded on the theory, *first*, that said conveyance was without consideration in fact, valuable or otherwise, and so is held by the defendants for the benefit of the intestate, and subject to an implied or resulting trust; and *second*, that the conveyance was not only without consideration in fact, but was made in fraud of the creditors of the intestate; that there was actual fraudulent intent, and so the conveyance is void under the statute relating to fraudulent conveyances, as to the creditors of the intestate, both prior and subsequent.

The answer denied all the allegations of the bill in respect to fraudulent intent and lack of consideration, and claimed the benefit of the statute of frauds and the statute of limitations.

The facts proved by the evidence taken in support of the allegations of the bill and answer, being set forth in the opinion of the court, render a statement of the substance of the bill, answer, and testimony unnecessary.

A motion was made by the defendants to suppress the answer to the *third* interrogatory of John E. Chamberlain, in his examination in chief, or so much thereof as attempts to state conversations between the witness and Jesse Johnson, deceased, the orator's intestate, before the deed in question was given, and not in the presence of the defendants. The question and answer were as follows:

Int. 3. " What occurred between you and said Johnson about that time, and where, as near as you can remember, in relation to his property?" Question objected to.

Ans. " I came home from Kentucky about the month of June, 1839, I should think, but am not sure that it might be 1840. Mr. Johnson remained away in Kentucky and Virginia through the summer and next winter, and when he came home I met him in Boston. On the way home from Boston, or after he got home, he told me about some trades he had made in Virginia that he was afraid were not satisfactory to the purchasers. He felt afraid they

7

would be on here and attach property, and so forth.   He told me
over the trade, and I told him there could be nothing to it, I did
not believe, I would risk myself.   He said he felt uneasy ; did
not feel safe, and wished me to tell him some way he could pro-
tect himself, if I knew any way.   I told him he could quit-claim
his interest in the farms to his brothers, and take a note' for it,
and transfer that note into a third man's hands, and let the third
man notify his brothers that he held the note, and there could be
no trustee.   Some time after this conversation with Jesse John-
son, Jr., he did deed his interest in that farm to his brothers, and
I took the acknowledgment of the deed.   I should not now have re-
membered that fact, if I had not seen the deed.   Jesse Johnson,
Jr., brought the deed to me.   I do not know whether his brothers
were present or not.   I know he had their note, and it was put
into James M. Chadwick's hands, and he notified them that he
held it.   I did not know of the notice at the time, except by
hearsay."

The motion to suppress embraced the testimony of another wit-
ness, but the same is not material to be stated.   This cause came on
for hearing upon bill, answer, traverse, and testimony, at the
December term, 1869, PECK, J., Chancellor.

The court, by agreement of the parties, made a *pro forma* de-
cree, dismissing the bill, from which the orator appealed.

*A. M. Dickey*, and *C. W. Clarke*, for the orator.

*Leslie & Rogers*, for the defendants, maintained, among other
things, that the deed from Jesse to defendants cannot be changed
into a *deed* of *trust* by parol, for that would be in the very teeth
of the statute of frauds.   There is nothing in the case from
which an implied trust can be raised.   It was simply a case of
bargain and sale, for a valuable consideration.   It is an absolute
deed, and no allusion to any trust whatever in it, and parol evi-
dence is not admissible to engraft and set up a trust.   General
Statutes, 450, § 22 ;  Rev. Statutes of 1840 was the same, 315,
§ 22 ;  Hill on Trusts, marginal page 61, and note 2 ;  Ib., 107 &
112 ;  Story's Equity Jurisprudence, Vol. 2, § 971–972, 1199 and
note 2 ;  *Movan et ux.* v. *Hays*, 1 John. Chan. Rep., 339 ;
*Moore* v. *Moore*, 38 N. H., 382 ;  *Flint* v. *Sheldon*, 13 Mass., 443 ;
*Vt. Cent. Rail R.* v. *Hill's Estate*, 23 Vt., 681.

The orator cannot in any event recover for the benefit of the present creditors, because the present creditors did not exist in 1841, but their debts accrued more than fifteen years after the deed was given and put on record. It was not the rights, debts, &c., of the present creditors, which was attempted to be avoided, and this bill is not brought and prosecuted by, or for the benefit of, creditors of 1841, if any existed. The conveyance is good, (if fraudulently made,) as to all persons, except those persons whose debts, &c., are attempted to be avoided. Gen. Sts., 672, § 22 ; 8 Vol. Law Reporter, 507, and cases there cited ; Story's Equity Jurisprudence, Vol. 1, § 361, and note ; Hovenden on Fraud, Vol. 2, 74 ; Hill on Trusts, marginal page, 163, note 1.

The defendants' deed was put on record, and they have occupied under it for twenty years, at least, *prior* to the accruing of the *present* creditors' debts, defendants all that time solely and exclusively occupying, claiming a *bona fide* ownership of the farm ; and the present creditors having full and complete knowledge and notice of defendants' deed and rights and claims, the debts could not have been contracted upon the belief that Jesse owned any part of the farm. And in view of such a state of facts, a voluntary deed is good against subsequent creditors solely.

The defendants have held, under said deed, the sole and exclusive possession and occupancy of the farm, claiming title thereto, adversely to all the world, for twenty-five years, and this action is barred by the statute of limitations. Gen. Statutes, 442, § 1 ; Hovenden on Frauds, Vol. 2, 118 ; Hill on Trusts, note 2 on marginal page 264 ; Ib., marginal page 265 ; *Kane et al.* v. *Bloodgood et al.*, 7 John. Chan. Rep., 90 ; 2 Vol. Story's Equity Jurisprudence, 734, § 1519 and note 3, § 1520, and note 4, §1520–*a.*

Argued, March term, 1870. Held for advisement till April, 1871, when the decision of the case was announced by BARRETT, J., upon the following opinion.

Before making a statement of the leading facts found by this court from the evidence, it seems best to dispose of some questions arising upon a motion to suppress the testimony of Mrs. Johnson,

widow of the intestate Jesse Johnson, deceased, and of John E. Chamberlin.

So far as Mrs. Johnson's testimony falls within the reason of said motion, we regard it of no importance, and give it no consideration. We therefore refrain from deciding the question made in respect to it by defendants' counsel. We take this course the more readily in view that the orator's counsel did not call the attention of the court at all to her testimony, nor discuss her competency as a witness.

As to John E. Chamberlin's testimony:—The conversation between him and Jesse Johnson, to which he testifies, was, according to his testimony, so immediately prior to the execution of said deed, by Jesse to the defendants, and the transaction which ensued between Jesse and the defendants, in which Chadwick took a part, was so exactly in accordance with the course suggested and talked about between Jesse and the witness, as to render the testimony in relation to that conversation admissible as bearing on the question of the intent with which Jesse made that conveyance to his brothers, the defendants. It falls within the principle of the decision in *Bridge* v. *Eggleston*, 14 Mass., 250, and is in consonance with the ideas of the court, as manifested in *Edgell* v. *Lowell*, 4 Vt. Rep., 413. Moreover, upon the case as it is before us, upon the whole body of the evidence, we should have little difficulty in holding the testimony to be admissible, on the score that it tended to show the incipient stage of a transaction, to which the other evidence in the case shows that the defendants became volunteer co-operating parties in its progress and consummation. See 1 Greenl. Ev. § 111 ; *Jennie* v. *Joslyn*, 41 Vt. Rep., 478.

As to the testimony of the defendants:—In respect to any matters that had transpired before the appointment of the administrator, the defendants were not competent to testify as witnesses. Touching " such acts and contracts as have been done or made since the appointment of the administrator," they are competent to testify. Gen. St., 327, § 24 ; *Ford's Exr.* v. *Cheney*, 40 Vt., 153.

As it could add nothing to the interest or usefulness of this case with reference to the legal questions involved and decided, if we

were to develope the processes and considerations by which our minds have been led by the evidence to our results as to the facts, we refrain from such developement, and proceed at once to state our findings.

It is found that said Jesse Johnson, the deceased, intestate, being the owner as tenant in common equally with the defendants, of the home farm, so called, in Bradford, and having become fearful that suits would be brought against him by parties in Virginia, with whom he had just been dealing in the sale to them of patent rights, on claims arising from such dealing, for the purpose and with the intent of preventing said real estate, and his interest in the personal property on said farm, from being subject to attachment in such feared suits, on the 13th day of December, 1841, conveyed, by absolute deed of quit claim, his title and interest in said farm to the defendants, his brothers, and at the same time gave them an absolute bill of sale of all said personal property, without consideration in fact, though upon the pretended consideration of $1400, for which sum the defendants executed and delivered their promissory note to said Jesse ; but said note was not deemed or treated, between and by said parties to it, as an instrument that was to be operative ; and since the decease of said Jesse it is not to be found, nor does the evidence show what has become of it, nor that any thing has ever been paid upon it ;—that said defendants at the time of said conveyance knew the purpose and intent of said Jesse, in making it, as aforesaid, and it was mutually understood that, as between themselves and said Jesse, his rights and interest in the property thus conveyed were not to be in any way affected by such conveyance, and that he was to and would have the same rights and interest in it, after said conveyance, as he had before ;—that for several years prior to said conveyance the three brothers had together lived upon, and carried on said farm, and owned, used, and disposed of the tools, stock and products thereof, as equal owners in common, and they continued so to do down to the year 1845, when said Jesse got married, and went to keeping house in the village of Bradford, a few miles from said farm, and some three years thereafter he removed to a farm he owned in Fairlee, on which he con-

tinued to reside till his decease in 1866 ;—that he participated in the carrying on and management of said farm, and in the use and disposal of the products and personal property till his said removal to Fairlee, and after said removal said farm was amicably carried on in the interest of said three brothers under the immediate superintendence and management of the defendants till about the year 1859 or 1860, when a misunderstanding and quarrel arose between said Jesse on the one part, and the defendants on the other, relative to other property, the Vermont House, owned by the three in common ;—that after said quarrel arose, Jesse asserted to the defendants his rights and interest in said farm as was understood between them at the time he deeded it to them, and down to the time of said quarrel, which they did not in terms deny, and tacitly, at least, assented to, and he claimed that they should reconvey to him ; but they on the other hand claimed, as business had gone on between them, there was a large balance due from him to them, and without explicitly denying his claim to have a reconveyance, they put him off in respect to it, by insisting that before doing it all matters of deal and difference between them should be adjusted.    Thus matters continued without settlement, and the subject of unfriendly contention and debate till the death of Jesse in 1866.    It is found that the assets of Jesse's estate, exclusive of his alleged interest in said farm, are insufficient for the payment of the debts of said estate ;—that this bill is brought by said administrator at the request of creditors of said Jesse, and for the purpose of realizing means with which to pay the debts proved against said estate ;—and that said creditors have become such since said deed by Jesse to the defendants, and none of the debts provable against said estate had in any part accrued at the time of making said deed ; and that said deed was given only for the purpose and intent above stated, and not with any fixed or defined purpose or intent of defrauding or avoiding any right, debt, or duty of any other creditors, claimants, or persons.    There is no evidence tending to show that those feared claims from Virginia were ever asserted, or put in suit in this state.

It is said in 1 Am. Lead. Cases, 40–1 : " There is no doubt upon the American authorities, that a conveyance for valuable

consideration made with an actually fraudulent intention to one taking part in such fraudulent designs would be void against the creditors intended to be defrauded," and many cases are cited. To this effect is *Edgell* v. *Lowell*, 4 Vt., 405. See also *Root* v. *Reynolds*, 32 Vt. It is further said, "It is doubtful, however, whether it could be considered void against any creditors, but those whose injury was specially contemplated." There is no occasion to discuss that question in deciding the case in hand. We think it may be assumed as a settled doctrine of the law that in case of a fraudulent and deceitful conveyance of property without valuable consideration, and with intent to avoid the right, debt, or duty of any other person, such conveyance is invalid as to subsequent creditors as well as to those who were creditors at the time of the conveyance. Though this subject has been frequently treated in the cases and the text-books, and the decisions and *dicta* collated and discussed, it seems proper in this case to spend a little time in again collating somewhat of the same matters. In 1 Am. Lead. Cases, 40, it is said, "it is clear, that if a conveyance be made colorably with actual intent to defraud any existing creditor or creditors, it may be avoided by subsequent creditors. * * * * However, the principle above stated is probably limited to voluntary and colorable conveyances, which are accompanied in law by the presumption of a secret trust for the grantor ; according to the distinction stated in *Clark* v. *French*, 23 Maine, 221, that a conveyance made on a secret trust for the grantor for the purpose of defrauding present creditors, is void also against subsequent creditors, because such fraud is a continuing one ; but that an absolute conveyance on valuable consideration, and without any secret trust for the grantor, if actually intended to deprive existing creditors of satisfaction of their debts, would be void against such creditors, yet would not be void against subsequent ones." In 1 Story's Equity Jurisprudence, § 361, in treating of the subject of *voluntary* conveyances, in respect to which the fact of being indebted at the time " is an *argument* of fraud," it is said, " where the conveyance is intentionally made to defraud creditors, it seems perfectly reasonable that it should be held void as to all subsequent, as well as to all prior creditors, on account of ill

faith. " In Newland on Con., 389, it is said " that deeds which are avoided by the statute of 13 Eliz., are void as well against those creditors, whose debts were contracted subsequently to such deeds, as against those creditors, whose debts were in existence at the execution of the deeds." In Roberts on Frauds, 452 : " But the partiality both of courts of law and equity to *bona fide* creditors is not extended to *all* that class of claimants in *equal degree* ; it loses so much of its force, where the demands of creditors arise upon *subsequent* contracts, as in such cases to require some accessory indications of fraud, if the previous conveyance be founded upon motives of such probable sincerity as the affections of consanguinity."—" It appears however from the cases already cited in this volume, that although *subsequent* creditors must yield to conveyances supported by such privileged considerations, yet that where a case stands unaccredited by these natural inducements, debts arising upon subsequent contracts will prevail by force of the 13 Eliz., against spontaneous gifts, however justified upon moral reasons."

Passing from the text-books of the law, to the reported cases : in *Taylor* v. *Jones*, 2 Atk., 600, in 1743, Sir William Fortescue, Master of the Rolls, in a much considered case held similar language, as expressing the true view of the law in that respect. Lord Hardwicke in 1745 in *Walker* v. *Burrows*, in reference to a voluntary conveyance by deed, said in effect if the grantor had been indebted at the time or soon after, so as to collect from thence the intention to be fraudulent, in order to defeat creditors, " it would have run on so as to take in all subsequent creditors."

Coming down to the case of *Reade* v. *Livingston*, 3 J. C. R., 481, decided in 1818, Chancellor Kent there makes a most searching and elaborate review of the cases bearing on voluntary conveyances as affected by existing indebtedness under the statute against fraudulent conveyances ; and with his characteristic discrimination and justness of reasoning educes certain results which he announces in explicit statement. On pages 497–8, he says, " There is no doubt in any case as to the safety and security of the then existing creditor. No voluntary post-nuptial settlement was ever permitted to affect him ; and the cases seem to agree,

that the subsequent creditors are let in only in particular cases; as where the settlement was made in contemplation of future debts; or where it is requisite to interfere and set aside the settlement in favor of the prior creditor; or where the subsequent creditor can impeach the settlement as fraudulent, by reason of the prior indebtedness." Referring to *Taylor* v. *Jones, supra*, in which it was held that the circumstances of the settler at the time of the settlement were not material, except as to the question of actual, intentional fraud, he said, " If insolvency can ever be made a question, as to these voluntary settlements, it can only be in respect to the subsequent creditors." * * " The cases are numerous to show that if the settlement be once set aside by the prior creditors, subsequent creditors are entitled to come in and be paid out of the proceeds of the settled estate." In summing up the result of his examination and consideration of the subject with reference to *subsequent* creditors, pp. 501–2, he holds that they are entitled to impeach such voluntary conveyance by a bill properly adapted to their purpose, in case the settler was indebted at the time to such an extent as to warrant the conclusion of fraud in fact; and " that their right to do so will not depend on the mere pleasure of the prior creditors, whether they will or will not impeach the settlement. "

This doctrine was recognized by SAVAGE, C. J., in *Wadsworth* v. *Havens*, 3 Wend., 412.

That a fraudulent intent, in making a conveyance without valuable consideration, vitiates such conveyance as to subsequent as well as to prior creditors, is shown to be the idea entertained by the most eminent American judges, in *Sexton* v. *Wheaton*, 8 Wheat. Rep., 229, opinion by MARSHALL, C. J.; in *Salmon* v. *Bennett*, 1 Conn. Rep., opinion by SWIFT, C. J.; in *Benton* v. *Jones*, 8 Conn. Rep., 186, opinion by HOSMER, C. J.; *Howe* v. *Ward*, 4 Greenl., 195, opinion by MELLEN, C. J. See also *Damon* v. *Bryant*, 2 Pick., 411; *Carpenter* v. *McClure*, 39 Vt., 9, in which it is said that the current of decisions is to the effect that " such transactions are void as to *all* creditors." In *Smith* v. *Lowell*, 6 N. H., 67, the doctrine as expressed in the cases and books, *supra*, was directly applied in a suit at law. We cite it only as showing

8

the assertion and application of the doctrine. Webster being in debt and in embarrassed circumstances, in 1826, conveyed land to Chandler, but continued in possession till the spring of 1830. In May, 1830, Chandler conveyed to Dewey, who on the same day conveyed to the defendant. The plaintiff, in April, 1830, attached the land on *mesne* process against Webster, and in May recovered a judgment against Webster in said suit, on a debt that accrued long after the conveyance from Webster to Chandler, and thereupon caused said execution to be levied on said land, and brought his writ of entry to recover possession under his title acquired by said levy. The defendant was regarded as standing in the same, and no better, right than Chandler would have stood if he had not conveyed the land. Upon the evidence the court were requested to charge the jury, that if they believed an honest debt existed from Webster to Chandler, and the conveyance was made in good faith, either to secure it by way of pledge, or to pay it, the conveyance must be held to be valid. " But the court instructed the jury that as the conveyance was absolute on its face, in order to sustain it, they must be satisfied it was made in payment and satisfaction of the debt." RICHARDSON, C. J., in pronouncing the opinion of the court, said : " It is settled that a conveyance made to defraud creditors, is void as against those who become creditors after the conveyance ; " and on this ground the plaintiff had judgment.

In *Parkman* v. *Welch*, 19 Pick., 231, Crombie, being largely indebted, conveyed land to Welch, without consideration, in 1829. In 1834, the orator obtained judgment against Crombie on a debt that accrued subsequently to said conveyance, and levied on the land. This bill was brought to avoid that conveyance. The point was made for the defendant, that " the deed from Crombie to Welch cannot be impeached by the plaintiff, because he was not a creditor of Crombie at the time that conveyance was made." The court, by DEWEY, J. : " This raises the question, whether the effect of the St. 13 Eliz., ch. 5, is to avoid conveyances made upon secret trust, and with fraudulent intent, as well in favor of subsequent as previous creditors. On this subject we apprehend the law is well settled : * * that a conveyance, fraud-

ulent at the time of making it, might be avoided in favor of subsequent creditors; " and cites books and cases.    And on this view and application of the law the case was decided for the orator, holding the conveyance void.

In *Clark* v. *French*, 23 Maine, 221, referred to in note to 1 Am. Lead. Cas., *supra*, the conveyance was made more than a year ' before the debt accrued to the creditor who was claiming to invalidate it, and the point was directly and explicitly in judgment, whether such *subsequent* creditor was entitled to assert the invalidity of a conveyance, that was colorable and without consideration; and it was held that he was so entitled; and in the opinion, the views were announced which have been presented in our extract *supra* from 1 Am. Lead. Cases.    The books and cases thus referred to, and others cited in those books and cases, present the views and reasons, upon which the doctrine rests, so fully as to render discussion at this time a profitless gratuity, and they seem to us to bear the force of authority as to the law of the subject as involved in the case now in hand.

In the cases of voluntary settlements on *good* consideration, as distinguished from *valuable*, the effective point is that such settlements are held to be in themselves fraudulent as to creditors if the grantor was insolvent, or was indebted at the time of the settlement to such an extent that such settlement deprived him of means necessary in order to pay his existing indebtedness.    The *fraud* works the invalidity; and the fact of being thus insolvent, or thus indebted, is regarded as a conclusive " argument of fraud, " without inquiring as to the actual fraudulent intent.    So in cases of conveyance, with the actual and *active* intent to delay or hinder creditors, the fraud operates the invalidity, in whatever way such fraud may be proved.

. The present is not a case of *trust*, between the parties to the transaction, to be set up and enforced by the *cestui que trust* or his representatives.    It is a question of *fraud* by reason of a secret trust with fraudulent intent, as affecting the validity of the conveyance,—the matter of a recognized trust relation being involved only in subserviency to the theory of the law, as to the relation and character in which· the fraudulent grantee holds the

estate with reference to the parties entitled. Hence all the doctrine of the law and the cases as to the proof of a trust, *aliunde* the deed of conveyance, whether it *may* be by parol, or *must* be by writing, are not involved in this case. Here the question is one of fraudulent intent; and such intent may be proved by any kind of evidence by which fraud in any other case may be proved. When that is proved, then ensues whatever of trust relation there may be ; but such relation is practically regarded only with the view of preserving the symmetry of the legal theory in making out the proper destination of the property, in order to answer the rights, equities, and duties of all parties interested. Hence, all that part of the learned argument and the books cited on the subject of trusts, whether express or implied, both in reference to the proper evidence, and the quality, and incidents, and results of such trusts, need not be further considered in this case.

Having thus considered the subject, with reference to the law as it stands upon the common statute against fraudulent conveyances, originating with 13 Eliz., ch. 5, it is now to be remarked that sec. 43, 45, 47, of ch. 52 of our General Statutes, seem to proceed upon the same idea of the law as is shown to exist under said St. 13 Eliz.

In Sec. 43, the proceeding of selling, under a license from the probate court, may be had by the executor or administrator, if the deceased had, in his life-time, conveyed, &c., " with intent to defraud his creditors, or to avoid any right, debt, or duty of any person, or had so conveyed such estate that by law the deeds or conveyances are void as against his creditors, and the estate attempted to be conveyed would be liable to be attached by a creditor of the deceased in his life-time." Those alternatives are not intended to be equivalent modes of expressing the same thing, but to cautiously provide, by varied expression, for a wider range and variety of cases, than perhaps either form of expression would of itself embrace. "*Had*, in his life-time, conveyed," &c., by the natural and only just force of the language, embraces any such conveyance, made at any time in the said life-time. " With intent to defraud his creditors, or to avoid any right, debt, or duty of any person," does not limit the operation of the provision to

the case of parties who were the specific objects of said intent : the language differing in this respect from that of sec. 32, ch. 113, Gen. Sts., declaring fraudulent conveyances void, " as against the party or parties only whose right, debt, or duty is attempted to be avoided," &c., in connection with provisions making them a penal offense ; and also differing from that of sec. 28, ch. 65, Gen. Sts., which also declares fraudulent conveyances void " as against such person whose right, debt, or duty shall be so intended to be avoided, his heirs or assigns." Take, again, what follows : " or had so conveyed," (meaning in his life-time, and at any time within it,) " such estate that by law the deeds or conveyances are void as against his creditors, and the estate attempted to be conveyed would be liable to attachment or execution by a creditor of the deceased in his life-time." Making allowance for the inattention to rules of grammar in the use of modes and tenses in this last clause, it is obvious that the meaning is, that, if property had been so conveyed by the deceased in his life-time that a creditor — that is, any creditor of the deceased — might have held it by virtue of attachment and·levy of execution, then the property would be subject to the proceeding provided in that section. It was not meant to have its operation depend on the relation of a present existing creditor to the act of the fraudulent conveyance, as being an object of the actual intent of the fraudulent grantor in making the conveyance. This seems to be made obvious by the fact, that, while the section provides that the proceeding may be had in case the fraud wás directed to a single creditor, it provides also that the property may be applied to supply any deficiency of assets for the payment of all the debts of the deceased. There can be no doubt that the property conveyed in this case could have been successfully attached, and levied upon, and held by the party, to avoid whose right the conveyance was made. The fact that resort to a court of chancery would be necessary to clear the title, under the levy, from the cloud of the fraudulent conveyance on record, does not bear on the operation of this provision of the statute : for the very fact that is assumed in the provision, of there having been a fraudulent conveyance of the property by the debtor, so that the title of record is in the fraudulent grantee, and

still the property subject to the execution of a creditor, necessarily involves the idea that resort must be had to a court of chancery to perfect and clear the title under the levy. The 43d section provides for sale by the administrator, under license of the probate court, of the property thus fraudulently conveyed.

Sec. 45 authorizes, and makes it the duty of the executor or administrator, in the same class of cases, " to commence, and prosecute to final judgment, any proper action or suit, in law or equity, for the recovery of the property so conveyed, and he may recover, for the benefit of the creditors, all such real estate, so fraudulently conveyed," &c., &c. This proceeding goes to the matter of *title*, and subjects the property to the same appropriation for the benefit of creditors, in the hands of the executor or administrator, as if it had not been conveyed by the deceased, and the title had remained in him at his decease, the same that it was up to the time of such fraudulent conveyance.

These provisions of our statute lay out of this case what, in Am. Lead. Cas., 43, is said to have been much disputed, viz., whether an administrator may set aside a fraudulent conveyance of his intestate, when the property is wanted for the payment of debts.

It seems proper to remark, in this connection, that the original statute, expressly authorizing such proceedings and suits by the executor, or administrator, or the creditors of a deceased person, was enacted in 1831. See Laws of Vt., 2d vol., by Thompson, 64–5. The case of *Martin's Adm'r* v. *Martin*, 1 Vt., 91, was decided in 1828, being an action of ejectment, for the purpose of recovering property fraudulently conveyed by the intestate. The case of *Peaselee, Adm'r*, v. *Barney, Adm'r*, D. Chip. Rep., 331, was decided in 1814, in which it was held that an administrator could not, by bill in equity, set aside a fraudulent conveyance of his intestate, in behalf of creditors, but that the creditors themselves might do so. It is readily supposable that the statute of 1831 was designed to relieve the subject from the embarrassment under which it was laboring by reason of those decisions, and to furnish a facile and simple remedy in such cases, answerable to the requirements of the justice and equity involved.

Without pursuing the subject, the application and result, in the case before us, of the views thus presented, require no further exposition. We find the said conveyance by Jesse Johnson to the defendants to be fraudulent, within the meaning of our statutes against fraudulent conveyances, and hold that the orator, as administrator, may maintain this suit for the recovery of the real estate conveyed by said deed. The bill prays that an account may be taken of money received by the defendants, and of damages done by them. But those matters were not brought to the attention of the court in the argument, and have not been considered.

The cause is remanded to the court of chancery, with the following mandate:

The decree is reversed. The cause is remanded to the court of chancery, to the end that a decree may be made that the conveyance by said Jesse Johnson to the defendants is void as to the creditors of said Jesse, to the extent of the deficiency of the assets of the estate of said Jesse to pay the debts against his estate, and that the orator as such administrator has the power of sale, and the right to convey, to the same effect as if the conveyance to the defendants had not been made, so much of said real estate so conveyed by the said Jesse to the defendants, as shall be necessary to make up such deficiency of assets, and that all necessary and proper orders may be made, and proceedings had, for carrying into effect such decree by such sale, unless the defendants themselves shall make up such deficiency, by paying the amount thereof to the administrator of said Jesse; and further, that, when such sale shall have been made by said administrator, the defendants be decreed to make proper and effectual conveyance and assurance of title of the portion so bargained by the administrator;—the cause to stand in said court of chancery, for effectuating all the matters embraced in the premises; and that the orator recover costs of suit, to be duly taxed and allowed.