EDSON E. ROWLEY ET UX. V. GEORGE W. SHEPARDSON ET UX.

May Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed January 13, 1916.

*Review—Presumptions Favoring Decree—Fraudulent Convey-
ances—Fraud on Creditors—Judgment—Conclusiveness—
Married Women—Liability—Tort and Contract—Equity
Follows the Law—Exceptions to Findings by Chancellor—
Evidence—Materiality.*

Where the decree below is for defendants, all inferences to be drawn
from the facts found are against plaintiffs.

Where a husband, free from debt, and not to defeat a claim against him
by plaintiffs for fraud in the sale of a farm, conveyed his property
to his wife to enable her to hold it against his heirs in case of
death, he being in feeble health and desiring that it should go to
her and not to them, the conveyance was not in fraud of plaintiffs.

Where plaintiffs, in an action at law against a husband alone for
fraud in the sale of a farm the title to which was in his wife, ob-
tained judgment, she was not concluded thereby in a subsequent
suit in equity by plaintiffs against her and her husband to enforce
satisfaction of that judgment.

Since at common law a married woman could neither directly nor in-
directly make a contract that would so bind her that a judgment
thereon could be rendered against her person, she could not be
liable at common law for a tort founded on such a contract.

Where a husband, acting as his wife's agent in the sale of her farm not
held to her sole and separate use, with her knowledge and par-
ticipation defrauded the purchasers, and she thereafter received
the proceeds of the fraudulent transaction, although she is under
no liability at law for such fraud, the purchasers are entitled to
relief in a suit in equity against her and her husband to enforce,
out of such proceeds held by her, a judgment at law against him
for that fraud, for the maxim that equity follows the law will not
be so enforced as to allow her to profit by the fraud of her husband
ratified by obtaining the avails thereof.

In a suit in equity, where the chancellor, after he filed his finding of facts, filed an order, to which the transcript of plaintiff's exceptions taken at the trial was attached, that they might "be filed with the findings of fact already on file, and be treated as a part thereof," the exceptions were saved to plaintiffs, as there was a substantial compliance with P. S. 1268.

In order to reserve for review questions as to the admission or rejection of evidence on trial of questions of fact by a chancellor; they must be reserved by exceptions to the chancellor's findings filed in the court below in accordance with P. S. 1268, providing that no questions in regard to the admission or rejection of evidence by a master shall be reviewed by this Court, unless such objection is made by exception to the report duly filed in the court of chancery.

In a suit in equity against husband and wife to enforce satisfaction of a judgment at law recovered by plaintiffs against the husband for fraud in the sale of a farm the title to which was in the wife, where it was alleged that the wife received the proceeds of such fraud with knowledge thereof, her cross-examination as to whether she was told by the parties to the sale of the farm, after they had finally made their arrangements, what those arrangements were, bore directly on the issue whether the wife received the proceeds of the sale with knowledge of the fraud, and so was improperly excluded.

APPEAL IN CHANCERY, Windham County. Heard in vacation after the September Term, 1914, on the pleadings and findings of fact by the chancellor. Decree dismissing the bill with costs. The plaintiffs appealed. The opinion states the case. This case has been twice before in this Court, see 83 Vt. 167, and 87 Vt. 57.

*Charles S. Chase* and *William R. Daley* for the plaintiff.

*Barber & Barber* and *Cudworth & Pierce* for the defendants.

TAYLOR, J. This is a bill in equity to enforce satisfaction of a judgment that plaintiffs recovered against the defendant George W. Shepardson in an action on the case for deceit in the sale to them of a certain farm known as the "Hunting farm."

The cause was first here on demurrer to the bill, 87 Vt. 57, 87 Atl. 528. The decree was then reversed and the cause remanded with mandate permitting amendment of the bill, which has since been made. The cause was heard before the chancellor on the amended bill, answers and evidence taken. During the trial certain exceptions were noted to the chancellor's rulings. On the facts found the chancellor dismissed the bill and from this decree the orators appeal.

The material facts found by the chancellor are as follows: Defendant George W. Shepardson has no property in his own name upon which the execution in the suit at law can be satisfied. The plaintiffs seasonably took out successive executions which were duly returned unsatisfied; and on January 23, 1914, they took out an alias execution which was seasonably levied on all of the real estate of defendant Eva C. Shepardson and upon her interest in the real estate mortgage executed by the plaintiffs to her, all as the property of the said George W. The property thus levied upon was certain real estate in Londonderry, Vermont, known as the "Hermitage," of which the record title is in Eva C. This real estate is unincumbered and is valued from $6,000 to $9,000. Eva C. also holds the mortgage on the Hunting farm and the notes which it secures. Defendants are husband and wife and formerly lived in Massachusetts, where they were both employed on a salary for many years, the former receiving $1,200 to $1,500 a year and board and the latter about $300 a year and board. At the time defendants came to Vermont to reside they had together about $10,000 represented by deposits in savings banks held by each individually in about equal shares; also an equity in real estate in Massachusetts valued at about $2,400 standing in the name of Eva C. On coming to Vermont George W. made several purchases and sales of real estate using his own and his wife's money in the transactions. He acted as manager and agent for his wife in these matters, exercising his own judgment, and she acquiesced in his dealings.

One of the purchases made by him was the Hunting farm over which this litigation arose. The consideration paid was $4,000, consisting of $2,400 realized from the equity in the Massachusetts property, standing in the wife's name, $750 from each of their savings deposits and $100 as to which the source did not appear. George W. held the title to the Hunting farm in his own name until Jan. 12, 1904, when he transferred it without

consideration to Eva C. The farm was sold and conveyed to the plaintiffs in November, 1905, and in this transaction the fraud was committed for which the plaintiffs recovered judgment against George W. The purchase price of the farm was $1,600 for which the plaintiffs executed to Eva C. sixteen promissory notes of $100 each secured by a mortgage to her of the farm. Six of these notes have been paid with interest on the whole indebtedness to Nov. 20, 1911. Payments were sometimes received by George W. and sometimes by Eva C.

George W. purchased the Hermitage property in Dec., 1904, and the same was deeded directly to Eva C. The price paid was $3,750, made up as follows: $850 from George W.'s personal funds, $850 from savings deposit in Eva C's name and $2,050 received from the sale of timber purchased in 1901 for $1,050 with funds from savings deposit in Eva C.'s name. The chancellor finds that the conveyances were made to Eva C. to enable her to hold the property against George W.'s heirs in case of his death, he being in feeble health and wishing that it should go at his death to his wife and not to his heirs; that George W. was not indebted to any one at the time of the several purchases and transfers and has never owed any debts, so far as appears, for which claim has been made aginst his property, except the "debt" for which this action was brought; that none of the conveyances were made by the defendants with a view of defeating the claim of the plaintiffs and all, save the deed to the plaintiffs of the Hunting farm, antedated the defendants' acquaintance with the plaintiffs.

Plaintiffs claim that on these facts they are entitled to a decree enabling them to satisfy the execution out of the property as belonging to George W. The argument is that there is no finding that Eva C. had any separate estate; that money earned by her during coverture belonged to the husband in the absence of an agreement to the contrary; that there is no finding of a gift to her of the money deposited in her name or of the property conveyed to her; that the taking of title in her name on the findings did not change the ownership of the property so long as George W. lived; that in the circumstances the inference is that the property still belongs to him. But all inferences to be drawn from the facts found are against the plaintiffs, as the decree is for the defendants. It is unnecessary to consider whether the facts found show a valid gift to Eva C. It is enough to say that on the

facts found, supported by such inferences as would reasonably be drawn therefrom, we cannot disturb the decree. on the ground that Eva C. holds the title to the "Hermitage" property and the mortgage of the Hunting farm in fraud of plaintiff's rights as creditors of George W.   Their right of recovery, if any on the case before us, grows out of the fraud affecting the notes and mortgage received by Eva C. in the sale of the Hunting farm.

It is claimed that, as the findings show that Eva C. has the avails of the fraudulent transaction, the plaintiffs are entitled to have the notes remaining in her hands cancelled and the amount applied upon their execution against George W.   The bill is framed with this object in view.   As drawn it has a double aspect.   It seeks to have the judgment in the suit at law satisfied out of the "Hermitage" property and the mortgage on the Hunting farm as held by Eva C. in fraud of creditors; and is also framed to compel her to restore sufficient of the avails of the Hunting farm, which it is alleged she received through the fraud of George W. acting as her agent, to satisfy their execution against him.   As a foundation for this ground of relief the bill charges that George W. was acting as the agent of Eva C. in the sale of the Hunting farm to the plaintiffs; that she knew of and participated in the fraudulent representations made by George W. to induce the plaintiffs to purchase said farm; that she acquiesced therein and received the benefit thereof, taking to herself notes to the amount of $1,600 signed by plaintiffs and secured by a mortgage on the farm; that she has received $600 on said mortgage notes exclusive of interest and still holds notes to the amount of $1,000.   On this phase of the case plaintiffs ask that Eva C. be ordered to bring said notes and mortgage into court; that the same be decreed to be void and cancelled; that she be ordered to refund to them the money paid on said notes, or such part thereof as the court may deem just; and for further relief appropriate to this aspect of the bill.

On this phase of the bill defendants' answers, which are several, deny all allegations except that it is admitted that George W. acted as Eva C.'s agent in the sale of the Hunting farm. Defendant Eva C. avers in her answer that if George W. made any false representations in the sale of the farm, she was not informed thereof and they were without authority from her. Though admitting certain proceedings in the action at law, she avers that she is not bound thereby, not having been a party.   It

is not claimed that plaintiffs waived this ground of relief. On the contrary excerpts of the testimony before the chancellor incorporated into the record indicate unmistakably that they were relying upon it. Plaintiffs offered to show by Eva C. that she knew of the trade negotiated for her by George W. and in that connection stated fully the purpose of the offer, which related to this ground of relief. The chancellor declined to go into the question of fraud at the time of the sale or to hear evidence, as bearing on her present liability, that she was party thereto. The offer was excluded and the plaintiffs excepted. This exception will be considered later.

It is evident that the case is not ripe for decree on this branch. Several questions, and among them the question whether there was fraud in the farm transaction, were put in issue by the pleadings. Eva C. is not concluded by the judgment in the suit at law, not having been a party. The hearing before the chancellor having been limited to matters affecting the right of plaintiffs to satisfy the judgment out of property held by Eva C. in fraud of creditors, the findings are not broad enough in respect of other matters to afford a basis of a decree in favor of the plaintiffs. The exception saved is to the rejection of the offered evidence and not to the ruling of the chancellor limiting the inquiry; but, as it becomes necessary to reverse the decree on that exception, we notice defendants' claims with reference to that matter.

Defendants insist that the liabilities of Eva C. in the matter of the Hunting farm trade have been finally determined in the suit at law. *Rowley et ux.* v. *Shepardson et ux.*, 83 Vt. 167, 74 Atl. 1002, 138 Am. St. Rep. 1078. At the outset Eva C. was joined as defendant in that action. There was judgment below against both defendants. It was held on review in this Court that Eva C.'s liability was to be measured, not by the statute enlarging the powers of married women, the farm in question not being her separate property, but by the common law; and that she was not liable at common law for the tort of her agent in the sale of the farm, it being based upon her contract, and not a tort *simpliciter*. The reason for this result is that as at common law a married woman cannot make a contract, personally nor by her agent, that will bind her so that a judgment upon it can be rendered against her *person*, no liability at law rested upon her for a tort founded on such contract. *Row-*

*ley et ux.* v. *Shepardson et ux.,* 83 Vt. 167, 171, 74 Atl. 1002, 138 Am. St. Rep. 1078; *Russell* v. *Phelps,* 73 Vt. 390, 395, 50 Atl. 1101.

It does not follow as the defendants argue that because of that decision the plaintiffs must be denied the relief now sought. If so, what was intended only for a shield may become an effective weapon of offence. In the absence of a remedy at law the court of equity has ample jurisdiction to deal with a situation such as is presented in this case; and on proper showing can grant the plaintiffs relief against the fraud of Eva C.'s agent, not because of any liability at law for the torts of her agent in dealing with her property not held to her sole and separate use, but because it would be grossly inequitable for her to profit by the fraud of her agent which she ratifies by retaining the avails thereof after notice of the fraud. See *Paine* v. *Slocum,* 56 Vt. 504, 508. Defendants invoke the maxim "Equity follows the Law" and deduce therefrom that as to Eva C. there was no legal liability; so, as to her, equity affords no remedy. The maxim is not capable of any such application. See 1 Pom. Eq. Jur. §§425-427.

Plaintiffs brief certain exceptions taken at the trial before the chancellor. Defendants insist that the exceptions are not here because not filed in the court below. It appears from the files in the case that after the findings of fact were filed the chancellor made and filed an order, to which the transcript of the exceptions taken by the plaintiffs at the trial were attached, "In this case the following exceptions to the admission and rejection of evidence may be filed with the findings of fact already on file and may be treated as part thereof." Though lacking the usual formality of exceptions to the findings, the papers thus filed may fairly be regarded as the equivalent of exceptions thereto and it is apparent from the record that the chancellor so treated them. It is clear that the exceptions were not waived but were insisted upon and considered in making up the decree. In the circumstances we regard what occurred as a substantial compliance with the requirements of P. S. 1268 and that the exceptions were saved to the plaintiffs.

There seems to be want of uniformity of practice in the matter of exceptions taken during the trial by the court of chancery. It should be noted that unless P. S. 1268 is held to apply to trials of questions of fact by the chancellor there is no

provision of law for bringing to this Court questions regarding the admissibility of evidence. We again take occasion to say that such a trial by the chancellor is like a trial by a special master and that good practice, if not the only practice to make questions in regard to the admission and rejection of evidence available on review, requires that such questions be reserved by exceptions to the chancellor's findings filed in the court below in accordance with P. S. 1268. See *Barber* v. *Bailey,* 86 Vt. 219, 222, 84 Atl. 608, 44 L. R. A. (N. S.) 98.

During the cross-examination of Eva C. the plaintiffs offered to show by her certain conduct of herself and her husband when in Boston, Mass., with reference to the suit at law then pending in Windham County Court, as bearing "upon the good faith of the dealings of these parties." Later substantially the same offer was made "as bearing upon the credibility of this witness and of the other defendant." Both offers were excluded and exceptions noted. It would require too much space to give the offers in full. Upon careful examination they are found to contain nothing pertinent to the issues on trial. They were of such a character that the chancellor might properly exclude them as outside legitimate cross-examination.

In further cross-examination of the same witness plaintiffs asked, referring to the negotiations for the sale of the Hunting farm.

"Q. But later, after they had finally made their arrangements, they told you what those arrangements were?"

An objection being interposed, a colloquy followed between plaintiffs' counsel and the chancellor in which counsel claimed, in brief, that it was material to show that witness knew of the transaction and of the fraud practiced by her husband upon the plaintiffs, and knowing that accepted the trade as made by him for her and the benefits accruing therefrom. The chancellor ruled that it was immaterial to the issues on trial and excluded the evidence, to which plaintiffs excepted. This was error. As we have seen, the evidence sought to be elicited bore directly on the issues made in the pleadings. For error in the exclusion of evidence the case will have to go back for a retrial.

Plaintiffs have not briefed their exceptions to the failure of the chancellor to find as requested in certain particulars and so have waived them.

*Decree reversed and cause remanded.*