JOHN T. RAITHEL ET UX. *v.* WALLACE A. HALL ET AL.

February Term, 1925.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1925.

*Duty of Chancellor as to Finding Facts—Motion for Decree Before Finding Inopportune—Finding of Fraudulent Conveyance Sustained—Proof of Fraud by Circumstances—Pleadings—Sufficiency to Charge Fraud—Chancellor's Statement of Doubt Not Finding of Fact—Right to Challenge Validity of Assignment for Fraud—Cross-Examination of Intervening Claimant as to Good Faith—Chancellor Not Presumed to Have Made Improper Use of Evidence—Showing of Prejudice Necessary to Constitute Reversible Error—Inadequate Briefing—Supreme Court Will Not Search for Error —Evidence Admissible on Question of Fraudulent Transfer —Harmless Error.*

1. Where pleadings presented controverted questions of fact, touching which evidence had been introduced by both parties in

hearing before chancellor, it was the latter's duty to find and state the facts, the proceedings in this respect being the same whether the trial is before a chancellor or before a special master.

2. Under such circumstances, motion made by claimant at close of all the evidence for decree in his favor, before chancellor had found and stated the facts, was properly denied as inopportune.

3. In action to enjoin fraudulent assignment of plaintiffs' note and mortgages, evidence *held* to sustain finding that transfer by codefendant of such note and mortgages to intervening claimant was fraudulent as to plaintiff.

4. While fraud is never to be presumed and must be affirmatively shown, it may be proved by circumstantial evidence, in whole or in part.

5. In action to enjoin fraudulent assignment of plaintiffs' note and mortgages, while the words conspiracy and collusion were not used in pleadings, allegations of claimant's answer and plaintiffs' reply thereto, *held* to sufficiently charge fraud upon plaintiffs by both codefendant and claimant.

6. Chancellor's statement, in his findings, that he was in doubt as to what codefendant had done with certain money claimed to have been received by him from claimant as consideration for transfer by such codefendant to claimant of plaintiffs' note and mortgages, *held* not a finding on the issue.

7. If assignment of plaintiffs' note and mortgages from codefendant to an intervening claimant was fraudulently and deceitfully made to avoid a right, debt, or duty of plaintiffs, it was, as against them null and void, and their right to challenge the validity of such assignment did not depend upon their having acquired a lien on the property prior to assignment.

8. In action to enjoin fraudulent assignment of plaintiffs' note and mortgages, cross-examination of intervening claimant, who claimed to be an innocent purchaser for value, as to whether he bought mortgage during pendency of plaintiffs' action at law against assignor of such mortgage for fraud and deceit, in sale of farm, for purchase price of which note and mortgages were given, without saying anything to plaintiffs about purchase, and whether he had not kept purchase a secret, *held* proper.

9. Where evidence was admissible against certain parties to a suit,

it will not be presumed that chancellor made an improper use of such evidence, the contrary not appearing.

10. Where party taking exception to admission of evidence was not shown to have been prejudiced thereby, reversible error *held* not to appear.

11. Merely restating in brief what was said in taking an exception does not constitute adequate briefing.

12. Supreme Court will not search transcript for error.

13. On issue whether assignment by codefendant to claimant of plaintiffs' note and mortgages was fraudulent, certain evidence *held* admissible as tending to show claimant's familiarity with such codefendant's business affairs, and readiness of claimant to assist such codefendant whenever assistance was needed.

14. In action to enjoin fraudulent assignment of plaintiffs' note and mortgages, certain evidence as to statements of intervening claimant to plaintiffs' counsel, about the purpose of assignment to him, and about giving plaintiffs notice of any further transfer of such note and mortgages, *held* harmless as to such claimant.

APPEAL IN CHANCERY. Heard on pleadings and findings of fact by chancellor at the September Term, 1924, Windham County, *Fish,* Chancellor. Decree for plaintiffs. Appeal by claimant, Elmer P. Goodnow. The opinion states the case. *Affirmed and cause remanded.*

*Carpenter & Clawson* for claimant.

*Barber, Barber & Miller* for the plaintiffs.

SLACK, J. This is a suit in chancery, and is here on claimant's appeal from a decree for plaintiffs. The suit was brought against Hall and Hughes. It appears from the allegations of the original and amended complaint that on August 13, 1921, Hall conveyed to plaintiffs a farm and personal property in the town of Dummerston for forty-two hundred dollars, and took in part payment plaintiffs' promissory note, of same date, for twenty-seven hundred dollars, secured by a mortgage on said farm and also by a mortgage on said personal property; that on January 17, 1923, plaintiffs brought a body action against Hall for fraud and deceit in the sale of said farm, which action was returnable

to Windham county court; that Hughes became bail for Hall in that suit by indorsing his name on the original writ, and that to secure him for so doing, Hall assigned to him said note and mortgages; that at the April Term, 1923, of said court, the jury returned a verdict for plaintiffs in that suit for twenty-two hundred and ten dollars, but that a final judgment had not been obtained when this suit was commenced; that Hall had given out by speech that he would never pay any damages the jury might award against him; that he had no money, or property other than his claim against the plaintiffs evidenced by said note out of which to satisfy any judgment which the plaintiffs might eventually recover; that plaintiffs believed that it was his intention to sell and dispose of said note and never pay any judgment in their favor; that plaintiffs' claim, because of its nature and the fact that it had not been reduced to a final judgment, could not be set off, at law, against the claim which Hall held against them; and that by reason of the premises plaintiffs were entitled to have their damages in the action against Hall, when ascertained, set off and applied in reduction of his note; and the prayer is that Hall and Hughes be enjoined from selling, assigning, or otherwise disposing of said note and mortgages, and that such judgment as the plaintiffs finally recover in their action against Hall may be applied in part payment and satisfaction of the note they gave him, and that to the extent of such judgment it may be set off against said note. The supplemental complaint, which was filed May 24, 1924, alleges that the judgment rendered by the lower court on said verdict was affirmed by the Supreme Court at the May Term, 1924, and had, therefore, become a final adjudication of plaintiffs' damages in that action, and prays, in substance, as does the original complaint. Neither defendant filed any pleading other than a joint demurrer which was not relied upon, but the case proceeded below as though each had filed a general denial to the complaint, and the decree is unchallenged so far as they are concerned.

After plaintiffs filed the supplemental complaint, Elmer P. Goodnow asked, and had, leave to intervene as claimant to said note and mortgages, and thereupon filed an answer to the complaint wherein he admitted the assignment of the real estate mortgage to Hughes, but alleged that the purpose of such assignment was to secure Hughes, not only for becoming bail for Hall in plaintiffs' action at law, but also to secure him for services and

disbursements in defending Hall in that action; and further alleged that on May 8, 1923, Hall sold and assigned to the claimant, for a good and valid consideration, all of his, Hall's, right, title, interest, and estate in and to said mortgage; that at the time he purchased said mortgage he had no knowledge of any contemplated action on the part of these plaintiffs to have their judgment against Hall applied to the payment of said mortgaged note, and that he had no knowledge of these proceedings until the last of May, 1924, and denied the right of the plaintiffs to have their judgment against Hall set off against said mortgage.   In reply, the plaintiffs reaffirmed that said note and mortgages were assigned by Hall to Hughes to secure the latter for becoming bail for the former in the deceit action, and, severally, denied all other allegations of claimant's answer, and further alleged, in substance, that claimant had full knowledge of the litigation pending between them and Hall at the time of the alleged assignment to him; "that defendant Hall approached said claimant for the purpose of selling his interest in said mortgage debt solely for the purpose of hindering and delaying the plaintiffs in the collection of their claim and judgment against said Hall; that claimant was fully aware of all these circumstances when he purchased defendant Hall's interest in said mortgage debt of the plaintiffs, and became a party thereto; that the circumstances attending said transaction were such as to put the claimant or any prudent person upon inquiry as to the object and purposes for which defendant Hall was attempting to transfer said mortgage debt to said claimant; that by reason thereof said transfers are fraudulent and void as against the rights of these plaintiffs." The new matter set up in plaintiffs' reply was denied by the claimant.

Evidence was heard bearing on the issues thus presented, the facts were found and stated, and a decree was entered declaring the assignment from Hall to the claimant to be null and void, and applying the amount of plaintiffs' judgment against Hall in payment and satisfaction of his interest in said note in accordance with the prayer of the complaint.

[1, 2]   At the close of all the evidence, the claimant moved for a decree in his favor denying the right of plaintiffs to have the amount of their judgment against Hall set off against said note, and establishing his title to the note and mortgage under his assignment, the motion was denied and he had an exception.

The motion was properly disposed of. The pleadings presented controverted questions of fact touching which evidence had been introduced by both parties; hence it was the duty of the chancellor to find and state the facts. While the statute which provides for a hearing of chancery causes involving controverted questions of fact by a chancellor (G. L. 1511), does not expressly provide that he shall find and state the facts, the provision of the same section relating to exceptions makes it clear that it was intended he should do so. That provision is: "Exceptions taken in the trial of controverted questions of fact before a chancellor shall be available on appeal in the same manner as in county court causes tried by the court"; and in the county court causes there referred to the facts must be found, etc., before a bill of exceptions is allowed. G. L. 2259. Then, too, a trial by the chancellor is like, and takes the place of, a trial by a special master, and the statute expressly provides that special masters shall make full report of the facts found by them (G. L. 1518), and that no question regarding the admission or exclusion of evidence by them shall be heard in this Court unless objection thereto is made by exception to the report, which is the finding, duly filed in the court of chancery. G. L. 1520. The latter provison has been repeatedly held to apply to hearings before chancellors. *Barber* v. *Bailey,* 86 Vt. 219, 84 Atl. 608, 44 L. R. A. (N. S.) 98; *Rowley* v. *Shepardson,* 90 Vt. 25, 96 Atl. 374; *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425, 101 Atl. 151; *Waterman* v. *Moody & Rogers,* 92 Vt. 218, 235, 103 Atl. 325. To dispel any existing doubt in the matter, we take this occasion to say that so far as finding and reporting, or stating, the facts are concerned, the proceedings are the same whether the trial is before a chancellor or before a special master. It being the duty of the chancellor to find and state the facts in the instant case, the motion was inopportune and was therefore properly denied. But it was without merit in any event since, as we shall see, the decree for the plaintiffs was justified and must be sustained.

The chancellor found, among other things, "That the defendant Hall and the claimant Goodnow conspired to defeat any claim that the plaintiffs might make involving the twenty-seven hundred dollar note in connection with their execution against Hall, * * * that the transaction between defendant Hall and claimant Goodnow was in fraud of the rights of the plaintiffs; that the transfer was nominal rather than real; was intended

to defeat any effort that might be made by the plaintiffs to secure themselves through the twenty-seven hundred dollar note and was so understood by both defendant Hall and claimant Goodnow at the time * * * * that the claimed transfer is so in abeyance in fact that as between defendant Hall and the claimant Goodnow the matter either stands as it did before any transfer was made or what was represented in the transfer as fifteen hundred dollars is now so held that the defendant Hall can avail himself of it if he so desires.'' These findings were excepted to by the claimant on the ground that there was no legal evidence in the case, which was received against him, to support them; that they were contrary to the evidence, and that under the pleadings they were unwarranted, and irrelevant and immaterial to any issue raised against him.

[3]   That Hall's purpose in transferring the note and mortgages to the claimant was to fraudulently place them beyond the reach of plaintiffs is too well established by the evidence to admit of doubt. While the evidence against the claimant is not so compelling as is that against Hall, it is clearly sufficient to sustain these findings. His own testimony supports this conclusion. He testified that he was Hall's son-in-law; that he had been married ninteen years; that he and Hall were on friendly terms, were frequently at each others' homes, and worked at the same place in Brattleboro; that he knew of the trouble between the plaintiffs and Hall growing out of the farm transaction; that he was a witness for Hall in a trover suit the latter brought against plaintiffs a short time before, and was a witness for Hall and helped prepare his defense in the deceit action; that the assignment to him was actually made the next day after the verdict was returned in that case; but that the arrangement relating thereto was made two or three days before, which was during the trial, when Hall was staying at claimant's home; that he knew about Hughes' interest in said note and mortgages but made no attempt to ascertain the extent of such interest, and had no knowledge concerning the same except what he inferred; that he never notified the plaintiffs, who were the makers of the note, nor Hughes, of said assignment; that no one ever knew about it except Hall and himself; that the consideration for said transfer was fifteen hundred dollars for which amount he gave Hall his note dated May 8, 1923, payable three months thereafter; that on August 3, 1923, he paid Hall one thousand dollars thereon, in

cash, and paid him the balance by check dated August 11, 1923; that he obtained the one thousand dollars which he paid Hall from the Brattleboro Trust Company on a check drawn by himself and payable to his own order, and gave the money to Hall somewhere on Elliott Street in the village of Brattleboro where he "accidently" met him; that his reason for paying the one thousand dollars in cash was that Hall wanted it in that way. Concerning this payment, Hall testified that he couldn't tell why Goodnow paid him cash; that he didn't think he asked him to; that there was no reason why he should because he, Hall, "could get the check cashed." While Goodnow's note and the two checks which were in evidence tended to corroborate his testimony showing actual payment by him for the Hall note and mortgages, they were by no means conclusive of that fact, and when weighed with other evidence touching the entire transaction may well have been considered, as they evidently were, an attempt to conceal a fraud already perpetrated.

[4] While it is true, as urged by claimant, that fraud is never to be presumed, but must be affirmatively shown, it is also true that fraud, like any other fact, may be proved by circumstantial evidence, in whole or in part. The circumstantial evidence was such in the instant case that the claim that the findings were based on presumptions is not justified.

[5] These findings are also challenged on the ground that the pleadings do not allege fraud, conspiracy, or collusion. Whether the claimant could take advantage of such fact, if true, in the manner attempted we need not consider, since the pleadings are not open to this objection. While the words conspiracy and collusion are not used in the pleadings, the allegations of claimant's answer and plaintiffs' reply thereto, which we have noticed above, sufficiently charge a fraud upon the plaintiffs by both Hall and Goodnow.

[6] Defendant Hall told a highly improbable story about what he did with the fifteen hundred dollars which he claimed to have received from Goodnow, and about other money he claimed to have. In the course of the findings, the chancellor stated the substance of Hall's claims respecting these matters, and disposed of them by saying that he was in doubt as to what Hall did with the fifteen hundred dollars. The claimant treating this statement as a finding excepted to it. But there was no finding

on this issue, and manifestly the statement could not have prejudiced the claimant.

It is claimed that the court erred in entering a decree declaring the claimant's assignment null and void and applying the judgment recovered by plaintiffs against Hall in the deceit action in payment and satisfaction of the note which they gave Hall because: (1) Having arrested Hall's body in that action instead of attaching his property, they acquired no lien on his property and he was at liberty to dispose of it as he saw fit; (2) the claimant was an innocent purchaser for value; (3) the claimant paid a valuable and adequate consideration for the Hall note and mortgages; (4) Hall's available assets were increased instead of diminished by the transaction; (5) there was no evidence of fraud or collusion; and (6) there was no evidence of fraud or collusion, and those elements could not be inferred.

[7]     Plaintiffs' right to challenge the validity of the assignment from Hall to Goodnow did not depend upon their having acquired a lien on the property assigned prior to the assignment. If the assignment was fraudulently and deceitfully made to avoid a right, debt, or duty of plaintiffs, it was, as against them, null and void.   G. L. 6893; *Dow v. Taylor,* 71 Vt. 337, 45 Atl. 220, 76 A. S. R. 775; *Foster* v. *Foster,* 56 Vt. 540; *McLanc* v. *Johnson,* 43 Vt. 48.   And the findings above referred to show such to have been the character of the transaction.   The other grounds urged against the validity of the decree are disposed of adversely to the claimant by the findings, and, therefore, require no further notice.

[8]     The claimant was called as a witness by plaintiffs and asked among other things, if he bought the mortgage with the plaintiffs' action at law pending without saying anything to them about it and, subject to the objection that it was irrelevant and immaterial, answered that he did.   The record shows that this answer was followed, immediately, by further inquiry as to whether he ever notified the plaintiffs that he owned said mortgage, and whether he hadn't kept that fact a secret.   This was all proper cross-examination of a party who claimed to be an innocent purchaser for value as against plaintiffs.

[9, 10]     The claimant excepted to the admission of certain evidence given by defendant Hall, and also to certain evidence given by defendant Hughes.   This evidence was admissible as against the defendants, at least they find no fault with it, and,

the contrary not appearing, it will not be presumed that the chancellor made an improper use of it. But an examination of such of this evidence as is called to our attention in a manner to require consideration discloses no reversible error. It is not apparent how Goodnow could have been prejudiced by Hall's evidence that the property he sold plaintiffs was worth all he got for it, hence reversible error in the admission of this evidence does not appear.

[11, 12]   The claimant had an exception, which appears on page 94 of the transcript, to the admission of all of Hall's evidence relating to twelve hundred dollars which he claimed to have on the ground that it was irrelevant and immaterial. This exception covered evidence already given by Hall on that subject. All that claimant says concerning this exception is that all of Hall's 'evidence found on page 94 and the eight preceding pages of the transcript was irrelevant, immaterial, and harmful. We held in *McAllister* v. *Benjamin*, 96 Vt. 475, 497, 121 Atl. 263, that a mere restatement in the brief of what was said in taking an exception was not adequate briefing. Besides much of this evidence was clearly harmless, and this Court will not search the transcript for error.

[13]   Hall's evidence that claimant was his important witness in his trover suit against plaintiffs was admissible in connection with claimant's evidence that he testified for Hall in the deceit action, and helped prepare the defense therein as tending to show claimant's familiarity with Hall's business affairs and his readiness to assist whenever assistance was needed.

[14]   Hughes' evidence of what he said to plaintiffs' counsel about the purpose of the assignment to him and about giving plaintiffs notice of any further transfer of the note and mortgages was of no consequence anyway, and was clearly harmless so far as the claimant was concerned.

This disposes of all the exceptions.

*Decree affirmed and cause remanded.*