A. T. DAVIS *v.* UNION MEETING HOUSE SOCIETY.

November Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 13, 1920.

*Court Will Not Search Transcript for Evidence—Exclusion of Evidence—Failure to Make Offer—Declaration of Tenant in Common Not Admissible Against Cotenant—Equity—Power to Retain Case for Final Disposition—Easements—Not Acquired by Permissive Use—Adverse Possession—Land Held for Pious Use—Presumption of Grant—Land Conveyed in Trust—When Beneficiary Treated as True Owner.*

Where the excepting party claims that the chancellor should have made a requested finding of fact but does not call attention to any evidence justifying such finding, the transcript will not be searched to see whether the chancellor should have complied with the request, but it will be assumed that the request was properly denied.

Where no offer of evidence is made on the exclusion of a question, no question is saved for review. .

The declaration of a tenant in common, not made in the presence and hearing of his cotenants, is not admissible against them.

The rule that once equity has taken jurisdiction of a case it will retain it for all purposes and dispose of the whole matter, is confined to cases where equity jurisdiction has been rightfully invoked for that purpose.

Where all the facts necessary for equitable jurisdiction are lacking, the court of chancery will not make a decree establishing the location of a disputed boundary line.

The plaintiff acquired no right to cross defendant's land by use, however long continued, where it was found that the use was permissive and not under a sufficient claim of right.

Under the provisions of G. L. 1875, title cannot be acquired by adverse possession to land granted and held for a pious use.

Where the plaintiff alleged and attempted to prove the right to occupy the defendant's land under such an arrangement that it would be inequitable for the defendant to terminate it, such position was

wholly inconsistent with a claim of title in himself, and precluded any presumption of a grant.

Where land was deeded to a trustee for the benefit of a church society, and he had no active duties to perform and was without power to take possession, or to manage or to exercise any control over the property, the beneficiary will be treated as the true owner.

APPEAL IN CHANCERY. Heard on bill, answer, replication, inspection of the premises, testimony of witnesses, and argument of counsel at the September Term, 1916, Washington County, *Stanton*, Chancellor. Decree dismissing the bill with costs. The plaintiff appealed. The opinion states the case.

*J. Ward Carver* and *Erwin M. Harvey* for the plaintiff.

*John W. Gordon* for the defendant.

TAYLOR, J. The defendant, an unincorporated association having more than five members, brought suit against the plaintiff in trespass for wrongs alleged to have been committed on premises occupied by the defendant in the village of Marshfield. This bill was brought to determine the plaintiff's equitable rights in the premises and to restrain the defendant from prosecuting the suit at law pending the determination thereof and from further interfering therewith. The cause was fully heard by the chancellor, who rendered a decree dismissing the bill. It was first heard in this Court on appeal as though standing on a demurrer; but it was then held that the demurrer had, in the circumstances, been waived below, and that the decree appealed from was based on the findings. It was accordingly ordered that the case stand for argument on the merits. *Davis* v. *Union Meeting House Society*, 92 Vt. 402, 105 Atl. 29.

Plaintiff briefs two exceptions to the findings which we will first consider. He requested, in substance, that the chancellor find and report that the use of a certain portion of the land in question now occupied by him and the right to cross other parts of the land to reach the highway had for about forty years been under a claim of right on the part of himself and his grantors and the possession thereof "positively and essentially adverse." As to the land occupied by the plaintiff, the chancellor finds that at some time, at least sixty years ago, a building had been erected

on the meeting house lot near the rear thereof and abutting on the land now owned by the plaintiff, the entrance to which was from the plaintiff's land; that this building was used by the plaintiff and his father before him for various storage purposes and at some time as a hoghouse. It was commonly called the "swillhouse." It was torn down in 1910. In September, 1914, the plaintiff erected a larger building for a garage covering in part the land occupied by the swillhouse and extending westerly onto his own land. There is no finding as to how the swillhouse came to be erected on the meeting house lot and no finding as to the character of the occupancy. Concerning the claimed right to cross the lot the chancellor finds that, so far as appeared, the land had been unfenced, except that next to the plaintiff's land there were three stone posts on which was a railing where teams were hitched by anybody who chose to do so; that anybody that desired to cross the meeting-house lot did so at pleasure; that this privilege was exercised by the plaintiff and his predecessors for at least sixty years; and that the use was open, notorious, continuous, and permissive. The chancellor states that he does not find that the use was under "an expressly asserted claim of right."

The plaintiff excepted to the failure of the court to find as requested "and to the facts as found." In his brief he complains only of the failure of the chancellor to comply with his request in respect to the use and occupancy of the ground formerly occupied by the swillhouse; but he does not call attention to any evidence justifying the requested finding. We do not search the transcript, though it is referred to, to see whether there was evidence on which the chancellor should have complied with the request, but will assume, the contrary not being made to appear, that the chancellor was justified in denying it. *Gordon* v. *Deavitt*, 85 Vt. 338, 81 Atl. 1128; *Drown* v. *Oderkirk*, 89 Vt. 484, 96 Atl. 11.

The plaintiff improved as a witness H. S. Carpenter, and showed by him that he had lived in Middlesex (probably meant for Marshfield) the most of his life; that his father was James Carpenter; that he thought his father was at some time a pewholder in the Union Church, but was not certain; that he was present some of the time when a certain addition to the church was being built; that his father furnished some of the lumber that went into the addition; that the witness, his father, and

his brother assisted about the work. He was then asked: "At the time this addition was built, did you hear your father make any statement with reference to an arrangement which the Society had with Mr. Davis in regard to the exchange of land?" It was objected that no foundation had been laid for such evidence—that the statement of a landowner could not be "put in" under the circumstances shown. The chancellor ruled that the statement itself was not admissible, but received the answer to the question, which was in the affirmative. Plaintiff's counsel then said, "As I understand the court, my further offer the court excludes," and being so informed, he asked and was allowed an exception. No offer was made, and so no question was saved. But if we were to assume that the chancellor treated what was said as an offer to show plaintiff's claimed arrangement in regard to the exchange of land by the admission of one of the pewholders of the Society, the result would be the same. If James Carpenter was at the time of speaking a pewholder, which seems to have been open to question, he was no more than a tenant in common with the other pewholders, so far as his interest in the land in question was concerned. His declaration in the nature of an admission, not made in the presence and hearing of his cotenants, would not be admissible in evidence. The necessary identity of interest was wanting to make such a declaration admissible. *Pope* v. *Hogan,* 92 Vt. 250, 256, 102 Atl. 937; *Blondin* v. *Brooks,* 83 Vt. 472, 481, 76 Atl. 184.

We come to the consideration of the case as left by the findings. The Union Meeting House Society was organized in 1826 for the purpose of building a meeting-house in the village of Marshfield. The house was erected in 1827 on land situated on the southerly side of Main Street and then owned by Truman Pitkin, one of the members of the association. December 10, 1829, Pitkin conveyed the lot on which the meeting-house stood to one Silas Jacobs in trust for the Society, "their heirs and assigns forever." The record title to the land is still in Jacobs, who has been dead many years. The plaintiff owns the land adjoining the meeting-house lot on the west and south through successive conveyances from Pitkin, which he occupies as a house lot. George O. Davis, the plaintiff's father, acquired the title thereto in 1852 and occupied the premises until his death in 1906. The plaintiff acquired the title before the death of his father, since which time he has been in possession. The building

erected in 1827 is still standing, though it has undergone some alterations. It has been raised, lengthened, and set back from the street. As remodeled there is a basement or vestry below and a room above used for religious purposes, fitted with pews, pulpit, and gallery. Regular church services were held in this room until about twenty years ago, and since then they have been held there for a few weeks each summer until the summer of 1914. The Society has preserved its organization, kept the building in repair, and raised money by a tax on the pewholders to defray expenses.

In 1879 the Ladies' Social Circle, an organization independent of the Meeting House Society and composed of ladies who were endeavoring to assist in matters pertaining to the Society and its work, built an annex to the basement of the church to furnish room for a stage to be used in connection with the basement for entertainment purposes. The Society consented to this being done by the Social Circle, but without incurring liability for the expense. The ladies secured the funds to build the annex by subscription, to which some of the pewholders contributed. The Social Circle assisted in raising money to pay for preaching and for buying carpets, a chandelier, and other necessary articles for the benefit of the church. The basement of the building together with the annex has been rented to dramatic clubs, lodges,. and travelling shows, as well as being used for church meetings; and the rent received therefor has been used for the support of the church. A portion of this annex was erected with the consent of George O. Davis, upon land then owned by him. Plaintiff's asserted equities in the meeting-house lot are claimed to have their origin in this transaction. The bill alleges, in substance, that in consideration that plaintiff's father would permit the Meeting House Society to build the addition upon his land, the Society agreed to permit him and his heirs and assigns forever to maintain a building on the line between their respective properties, to be partly on the land of each, and to have a right of way across the meeting-house lot for access to said building from Main Street; that pursuant to such agreement the annex to the meeting-house was erected and has ever since been maintained with the consent and acquiescence of the plaintiff and his predecessors in title; and that the plaintiff and his predecessors have always occupied the building situated in part on each of the adjoining properties without let,

hinderance, or objection until about the first day of September,
1914. The chancellor has failed to find any such agreement.
The substance of his findings respecting the building and claimed
right of way is as already stated.

It is apparent that this controversy arose when the plaintiff
commenced the construction of the garage. He was then notified
by one who claimed an interest as pewholder and member of the
Society that he had no legal right to cross the church land, but
plaintiff proceeded to complete the garage. In 1910, the plain-
tiff had built an addition on the easterly end of his house that
extended close to his easterly line, cutting off access over his
own land to the rear of his buildings and to the land where the
garage was subsequently erected. The garage contains two auto-
mobile stalls, one of which the plaintiff leases for rental. The
plaintiff and the other occupant of the garage have no way to
reach the street except across the meeting-house lot. After the
garage was completed, a committee of the Society erected a fence
with a gate along the street side of their lot and put a lock on
the gate. The plaintiff removed the obstruction, and the suit
in trespass was brought.

Plaintiff made the location of the division line between his
premises and those of the defendant one of the issues in the case.
He alleged that the defendant was wrongfully claiming that
the addition to his dwelling house was built over the line onto the
defendant's land, and among other things prayed that the loca-
tion of the line be determined. The chancellor found that the
line was located where the plaintiff claimed. It is now urged
that having taken jurisdiction the chancellor should have at
least made a decree establishing the location of the line. Counsel
overlook an essential qualification of the rule, as sometimes ex-
pressed, that once equity has taken jurisdiction of a case it will
retain it for all purposes and dispose of the whole matter. The
rule should be taken with the qualification usually stated, "where
the jurisdiction of chancery has been rightfully invoked for
that purpose." *Deerfield Lumber Co.* v. *Lyman,* 89 Vt. 201,
208, 94 Atl. 837. Perhaps a more satisfactory phrasing of the
general rule is that when the court has jurisdiction of the case
for one purpose it will be retained for a final disposition of the
whole matter. *Van Dyke* v. *Cole,* 81 Vt. 379, 391, 70 Atl. 593,
1103. It is not claimed that the facts in this case are sufficient
to give the court of chancery jurisdiction of the controversy

over the boundary as an independent ground for equitable relief; nor could it well be, for the case is lacking in all the facts necessary to such jurisdiction. See *Watkins* v. *Childs,* 80 Vt. 99, 66 Atl. 805, 11 Ann. Cas. 1123. It follows that before the relief asked for as to the boundary will be granted, some substantial ground of equitable jurisdiction must be established. In this, the plaintiff has failed. Though he alleged facts which may have brought the case within the jurisdiction of equity, so that it was properly retained until the final hearing, he came short in his proof, which disentitled him to any decree in his favor. *Deerfield Lumber Co.* v. *Lyman, supra.*

The plaintiff acquired no right to cross the meeting-house lot by use, however long continued, if for no other reason, because it is found to have been permissive and not under a sufficient claim of right. *Barber* v. *Bailey,* 86 Vt. 219, 223, 84 Atl. 608, 44 L. R. A. (N. S.) 98; *Trustees Cal. County Gr. School* v. *Howard,* 84 Vt. 1, 12, 77 Atl. 877; *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425, 452, 466, 101 Atl. 151. Neither could he acquire title to the land where the swillhouse stood by adverse possession, as there can be no limitation here, the land having been granted and held for a pious use. G. L. 1875; *Trustees Cal. County Gr. School* v. *Howard, supra.* Nor can he stand upon the claim of a presumptive grant. No such claim was made before the chancellor; but, on the contrary, he alleged and attempted to prove the right to occupy the defendant's land under such an arrangement that it would be inequitable for the defendant to terminate it, a position wholly inconsistent with a claim of title in himself. The position taken by the plaintiff in his allegations and proof precludes any presumption of a grant. *Trustees Cal. County Gr. School* v. *Howard, supra; Vaughn* v. *Congdon,* 56 Vt. 111, 116, 48 Am. Rep. 758.

We do not take the time to review all of the claims made by the plaintiff in his brief. Some would have to be disposed of as insufficiently briefed, not being supported by argument or citation of authority. As to some it is only necessary to say that they are untenable because not supported by the record, in some cases because there is no finding, though he had the burden, and in others because the finding is adverse. In some instances we are asked to infer facts from those found where the inference would be against the decree. · See *Rowley* v. *Shepardson,* 90 Vt. 25, 28, 96 Atl. 374. Several claims are made that grow out of a

mistaken view concerning the title to the meeting-house lot and the rights of the Society with reference thereto. The trust deed created a passive or naked trust. The trustee was a mere depository of the naked title, with no active duties to perform. He was without power to take possession, or to manage or exercise any control over the property. His death did not defeat the trust, for the law makes provision for its devolution. We are at present concerned only with the rights of the Society in the premises as they are regarded by a court of equity. Though the deed vested the legal title in the trustee, it vested an equitable estate in the Society. *Gilkey* v. *Shepard*, 51 Vt. 546; *Thompson* v. *Tryon*, 66 Vt. 191, 28 Atl. 873. In such a trust as this the equitable estate of the *cestui que* trust is to all intents the beneficial ownership, entitling him to the possession, the rents and profits, and the management and control, according to the extent of his estate. Such trusts are considered in equity as virtually equivalent to the corresponding legal ownerships, and the trust is regarded rather as fastened upon the estate than upon the person of the trustee. The equitable and real property, with all its features and incidents, belongs to the beneficiary, so that he is treated in every sense as the true owner. I Pom. Eq., §§ 153, 374; 3 Pom. Eq., § 988; *Atkins* v. *Atkins*, 70 Vt. 565, 41 Atl. 503. Such being the equitable view of the Society's relation to the property, it did not stand as a stranger to the title, but in equity was clothed with all the incidents of legal ownership.

*Decree affirmed and cause remanded.*