MOLLIE BROWN *v.* RAYMOND T. DERWAY.

January Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON and SHERBURNE, JJ., and STURTEVANT, Supr. J.

Opinion filed May 4, 1937.

38

*Guy M. Page* and *Hollis C. Porter* for the plaintiff's lessor, John J. Flynn.

*Martin S. Vilas* for the defendant.

SLACK, J. The petition alleges that the plaintiff owns a summer camp located on the shore of Lake Champlain on the northerly side of lot 188 in the fourth division of lots in Burlington, which is glebe land; that she holds title to that part of such lot by virtue of renewals of a lease from the University of Vermont, the then owner of a perpetual lease thereof, and by virtue of the recognition of her rights as such lessee by the present leaseholder of such lot, John J. Flynn, who holds under mesne conveyances from the University of Vermont; that defendant has repeatedly trespassed upon her premises and threatens to continue to do so, to her irreparable damage for which she has no adequate remedy at law, and prays for injunctive relief.

The defendant filed an answer and cross bill, and made, or attempted to make, Flynn a party plaintiff to these proceedings.

He thereby admits that the University of Vermont at one time owned a perpetual lease of lot 188, that the land occupied by plaintiff, outside of what belongs to him, is part of such lot, and that the same is glebe land; denies all other material allegations of the petition, and avers that the acts therein complained of were committed on his land. He then alleges that lot 188 is described in the original survey, made in 1798, as follows:

"No. 188. Beginning at a pine on the Lake shore, which is the northwesterly corner of No. 190; thence N. 58° E. 94.05 to a stake on the rear line of No. 38; thence N. 32° W. 7.50 to a stake; thence S. 58° W. 27.50 to a stake; thence N. 32° W. 10 chains to a stake; thence S. 58° W. 27.75 to an oak on the Lake shore; thence southerly along the Lake shore to the first bound, containing 103 acres, drawn to the glebe right."

that he is in possession of, and holds title to, land located in the southwesterly part of lot 40, which is a ministerial lot, and is described in said survey as follows:

"No. 40. Beginning at a birch on the bank of the Onion River, thence S. 58° W. on the westerly side line of No. 39, 25 chains and 25 links to a pine; thence S. 32° E. 7.50 to a stake; thence S. 58° W. 27.75 to an oak on the Lake shore; thence northerly on the Lake shore to a pine (which is on a perpendicular from said westerly side line of No. 39, continued 34 chains and 50 links); thence N. 58° E. 17 chains to a beach on the bank of the river; thence along the bank of the river upstream to the first bound, containing 103 acres, drawn to the first settled minister's right";

that the southerly boundary of his land westerly of lot 39 is the southerly boundary of 40 and the northerly boundary of 188; that Flynn holds title to that part of 188 that is contiguous to 40 under a deed dated January 12, 1915, wherein said premises are described, in part, as follows: "The premises are situated on the west side of North Avenue, and extend westerly to low

water mark of Lake Champlain,'' except what the plaintiff may hold title to as his lessee; that for more than one hundred years prior to the occupancy of 188 by Flynn, his predecessors in title and the defendant and his predecessors in title recognized the line between 40 and 188 to be as above stated, and to be the true boundary line; that during all that time, prior to 1908, such line was marked by a rail and board fence that extended westerly from 39 nearly to a gully, which breaks the shore line; that the land claimed by plaintiff lies westerly of this gully; that until the occupancy of such land by her, there had been a fence in line with the rail and board fence above mentioned, and in intent a continuation of it, that extended westerly from the gully to the water's edge; that the latter fence was coincident with the true line between 40 and 188, and for more than one hundred years prior to the occupancy of the latter by Flynn had been accepted and treated as the division line between the two lots by the owners of both; that during all that time the owners of the respective lots had actual, visible, notorious, hostile, exclusive and continuous possession of such lots to that line; that that line is more accurately described as ''extending * * * to and through the oak mentioned * * * to the present actual shore line, a distance of approximately 2,495 feet;'' that soon after Flynn acquired possession of 188 he attempted to move the line between it and 40 northerly several rods; that since then there has been a continuous controversy between him and defendant as to the location of the boundary line between their respective lots over the entire distance westerly of 39; that in behalf of, and supported by, Flynn, under some arrangement which is unknown to defendant, the plaintiff has recently taken up the controversy regarding the location of the boundary line between 188 and 40, westerly of the gully, and is attempting to push the line northerly at that point to include land of defendant; and prays that the boundary line between 40 and 188 may be determined, and that plaintiff and Flynn, their agents, etc., be permanently enjoined from further trespassing on defendant's land or exercising any act of ownership northerly of the line determined to be the boundary line between said lots, and for general relief.

Flynn appeared and filed an answer to the original petition admitting all and singular the allegations contained therein. He

demurred to the answer and cross bill on the ground that it was not such an instrument or proceeding as he was required to answer; did not conform to the rules and practice as to stating the party plaintiff and defendant, but sought to have him summoned as plaintiff instead of defendant, contrary to law, the rules of court and the ruling of the chancellor herein; failed to distinguish between argument and averment, and between knowledge and information and belief or conclusion, and failed to distinguish between argument and prayer for relief; that it shows that the land to which defendant asserts title is some six hundred feet distant in a course N. 58° E. (as of the magnetic needle in 1798) from the place where he is charged in the original petition with trespassing upon premises occupied by plaintiff Brown, and that the land of Derway described in the answer and cross bill is nowhere contiguous to the land described in the original petition; that the answer and cross bill is not within the scope of the original petition or of the matter in litigation therein, but raises an independent controversy and seeks to bring before the court distinct matters respecting the location of the boundary line of a lot in which plaintiff Brown is in no way interested, as appears from the answer and cross bill, and asserts title and right by adverse possession to land alleged to be sequestered to a public or pious use.

The plaintiff Brown also filed a demurrer to the answer and cross bill, the grounds of which, for reasons stated later, need not be noticed. Both demurrers were overruled and the answer and cross bill taken as confessed as to both Flynn and Brown, and a decree was entered for defendant in accordance with the prayer of the cross bill as to land northerly of the boundary line established by the survey and chain of title set forth in his cross bill. From such decree Flynn appealed; Brown did not, therefore, the grounds of her demurrer are immaterial.

The form of defendant's pleading merits much of the criticism in Flynn's demurrer; but, stripped of the needless and impertinent averments, we think it contains allegations sufficient to present the issue defendant was attempting to raise, namely, whether he holds title to the land where the trespasses complained of in the petition were committed. The allegation in the cross bill that plaintiff is acting "in behalf of and supported by," Flynn, in prosecuting her suit, which he admits by his demurrer,

in connection with the averment regarding his previous encroachments on defendant's land, and the fact that a decree in the latter's favor would not affect Flynn unless he was a party to the proceedings, amply justified making him such. That he is made a party plaintiff instead of a party defendant, if improperly so, is not important. He is in court, having entered a general appearance, and the court has authority to enter such a decree, for or against him, as the equities of the case demand, irrespective of the capacity in which he appears. We think that the issue raised by the cross bill is germane to that presented by the original petition. One purpose of a cross bill, under our practice, is to obtain full relief to all parties touching the matters of the original petition. *Hathaway* v. *Hagan,* 64 Vt. 135, 24 Atl. 131. *Averill* v. *Vermont Valley Railroad,* 88 Vt. 293, 92 Atl. 220, is an illustration of its use for this purpose. There, as here, the defendant was seeking injunctive relief from repeated trespasses committed by plaintiff, and it was held that a cross bill was proper, and *necessary,* if such relief was to be had. So it is here.

Lot 188 being glebe land, title thereto could not be acquired by adverse possession. P. L. 1674; *Davis* v. *Union Meeting House Society,* 93 Vt. 520, 108 Atl. 704, and cases cited. But we do not construe the allegations of the cross bill as a claim of title gained in that way, but as showing a recognition for many years by all concerned of the line in dispute as the boundary between the two lots; and while, as urged by Flynn, acquiescence in a wrong line will not establish it as the true line, such acquiescence for a long period of time is evidence that such line is the true line.

The important question is: Does it affirmatively appear from the cross bill that the locus in question is *not* within the boundaries of lot 40? This depends entirely upon what appears respecting the location of the westerly end of the division line between lots 40 and 188. This line, the surveys show, starts at the westerly boundary of lot 39 and runs: "thence S. 58° W. 27.75" (chains) "to an oak on the Lake shore." The surveys also show that from the oak the boundary of 188 runs "southerly along the Lake shore," and that the boundary of 40 runs "northerly on the Lake shore." It thus appears that the oak marked not only the southwesterly corner of 40 but also

the northwesterly corner of 188. The oak is gone. Where it formerly stood is a question of fact to be proved, unless admitted by the cross bill. Flynn says that it "is the vital element in this case" and insists that the cross bill shows that it stood at, or near, the end of the 27.75 chain course. But he claims title to the land occupied by the plaintiff as part of 188, although it is more than six hundred feet westerly of the point where he would locate the oak and in spite of the fact that from the oak his boundary, as we have seen, runs southerly along the lake shore. Moreover, he admits by his demurrers the allegations of the cross bill respecting the location, maintenance and recognition of the fence between the two lots to the "edge of the water of Lake Champlain" which is westerly of the land in dispute.

The only doubt we entertain respecting the disposition of the demurrer is due to the allegation in the cross bill that the line between 40 and 188 is more accurately described as "extending * * * to and through the oak mentioned," etc. This might be construed as an inferential admission by defendant that the oak stood where Flynn claims that it did. But we think that the material allegations of the cross bill, taken together, required the overruling of the demurrer.

It is apparent that further proceedings below may be required before a final decree is rendered, therefore:

*Decree reversed pro forma, cross bill adjudged sufficient, and cause remanded with leave to all parties to proceed as advised.*