## John Haklits et al v. John H. Oldenburg et al

[ 201 A.2d 690 ]

April Term, 1964

Present: Holden, C. J., Shangraw, Barney and Smith, JJ. and Brooks, Supr. J.

Opinion Filed June 2, 1964

*Billings & Sherburne* for the plaintiffs.

*Black & Plante* for the defendants.

**Holden, C. J.** This is an action in equity to enjoin a continuing trespass and to compel the removal of a camp building which the plaintiffs claim the defendants constructed astride their south boundary. The controlling issue is the location of the common boundary between the adjoining lands of the parties. The chancellor heard the cause, filed findings of fact and entered a decree for the plaintiffs. The defendants appeal. The substance of the facts reported by the chancellor are unchallenged. The error assigned is that the facts as determined by the chancellor do not legally support the decree.

The subject properties were originally included in the farm of Winfred Rocque and were situated on the east shore of Lake Champlain in the town of Shoreham. By warranty deed of July 13, 1946 Rocque undertook to convey a camp site to the defendants. The property is described in the deed:

"Being a piece of woodland bordering the shore of Lake Champlain, said land being a part of my home farm and located as follows, Approximately one eighth mile south of Shoreham Mills, a veneer mill owned by the firm of Fyles & Rice, Land is bounded as follows, On the north, south and east sides by meadow land owned by me and on the west by waters of Lake Champlain. Said land to be marked at the northeast and southeast corners by iron stakes driven into the ground. North and South boundary lines to continue due West from these stakes to the edge of the lake. I also convey to said grantees and to their heirs and assigns a right of way across my land to their property. I reserve for my own use and for my heirs and assigns a right of way across their property to the shore of the lake.

"Measurements of the property sold are as follows, Northeast stake to Southeast stake 65 paces. Northeast stake to high water mark of the lake 95 paces, Southeast stake to high water mark 55 paces."

Sometime after this conveyance was made, the plaintiffs acquired the remainder of the Rocque farm including the lands which adjoin the camp on the defendants' north, east and south boundaries. During the years 1958 and 1959 the defendants constructed a camp at the northeast corner of this parcel. The chancellor concluded that the camp building extended north of defendants' north boundary by fifteen feet and ordered its removal.

The starting point of the defendants' north line is referred to in the deed in that part of the description which specifies: "Said land to be marked at the northeast and southeast corners by iron stakes driven into the ground. North and South boundary lines to continue due west from these stakes to the edge of the lake."

The defendants' northeast corner as thus designated was located on the ground and is not in controversy. In establishing the north line of the camp property the chancellor followed the direction of the deed by extending the boundary from this starting point in a course due west to the lake shore.

The chancellor noted in his findings that the deed from Rocque to the defendants describes the land purchased as a "piece of woodland." The land north of the "due west line" which he determined to be the true boundary is described in the findings as "mostly open meadow."

The line claimed by the defendants does not follow a due west course to the lake. To the contrary, the boundary upon which the defendants constructed their camp and which they now claim to be the true line was found by the chancellor to be north 60 degrees west and extends 325 feet from the corner marker to the shoreline.

The defendants point to a finding made by the chancellor which reports that when the camp property was purchased, the defendant John Oldenburg wrote out the description in longhand as given him by the grantor. The finding states further: "At that time they drove a stake near the base of a large oak tree and placed piles of rock on a line formed between the northeast corner pin, as found in the preceding paragraph, and this oak tree. They also set an iron pin in a line parallel with the line as formed above, this latter pin being in a so-called gully, and is indicated as 'loose iron pipe' on Plaintiffs' Exhibit 4. These monuments form the defendants' north and south property lines as they claim them to be."

In connection with this claim of the defendants the court made further findings:

"14. At the time defendant John Oldenburg and his grantor Rocque were preparing the description now found in the warranty deed from Rocque to the defendants (Defendants' Ex. A), at the hour of about six o'clock in the afternoon, the sun was setting in a line from the northeast corner iron pipe, as shown on Plaintiffs' Exhibit 4, to the oak tree shown on said exhibit as (oak). This prompted Rocque to instruct defendant John Oldenburg to recite in his deed that the north and south lines are "due west" in line with the setting sun to the lake. The defendants rely to a great extent in their attempt to establish their north and south lines, as indicated by the pencil lines on Plaintiffs' Exhibit 4, on this term, 'due west.'

"15. The term 'due west,' as relied on by defendants in their effort to establish their north line, is too nebulous to assist the Court in locating the property line in controversy."

The defendants place much reliance on the substance of these findings as dictating a result contrary to that expressed in the decree. It is their contention that the intention of the parties as expressed in their act of setting the iron pin near the oak tree and in the gully establish the boundaries in these courses against the due west course called for in the deed.

The findings just referred to are more in the nature of a statement of the defendants' claim than positive determination of established facts. And it is clear from reading of all the findings in the complete context that these contentions were rejected by the chancellor in locating the true line. For this purpose, they were regarded by the chancellor as extraneous and of insufficient force to override the grantor's intention as expressed in his deed.

■ When the language of a deed is clear and unambiguous the court is not at liberty to look at extraneous circumstances for reasons to ascertain its intent. And the intent expressed in the description cannot be altered by evidence or findings of extrinsic facts. The understanding of the parties must be deemed to be that which their own instrument declares. *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425, 445, 101 Atl. 151.

■ Where a boundary line is described as running toward one of the cardinal points of the compass, it will be considered as running

directly in that direction unless some other word or words are used for the purpose of qualifying its meaning, or its direction is controlled by some object named. *Sowles* v. *Minot,* 82 Vt. 344, 357, 73 Atl. 1025, 137 Am. St. Rep. 1010; *Vermont Marble Co.* v. *Eastman, supra,* 91 Vt. at 443. The only object referred to in Rocque's deed is Lake Champlain. No words are present to qualify the course designated except the word "due" which limits the course to one which travels directly west. See Webster's New International Dictionary (3rd Ed. Unabridged).

The defendants urge that two ambiguities are present in the description which require a departure from the established rule. First, they depend on the statement of the chancellor in finding 15 to the effect that the "term due west," as relied on by the defendants . . . "is too nebulous to assist the Court in locating the property line in controversy."

It is at once apparent that this assertion by the trier does not characterize the term "due west" as used in the written description as ambiguous. He was speaking only of the defendants' interpretation of the term as meaning due west in line with the setting sun as being vague and indefinite as a guide to the true boundary.

Secondly, the defendants argue that the distances called for in the deed introduce ambiguities at variance with the course specified which justify resort to extraneous evidence. The only uncertainty here comes about from the unit of measurement employed. To be sure, a "pace" is not precise. Webster's New International Dictionary defines a pace as the "length of a step in walking." The term was treated in the evidence as approximately three feet. On the strength of this approximation, the distance called for in the deed coincides with the compass course more closely than with the course north 60 degrees west claimed by the defendants. The west course specified in the deed extends about ninety paces to the lake. The chancellor found that the course advocated by the defendants measures three hundred twenty-five feet, or about one hundred eight paces.

In these circumstances the general rule of construction that monuments control over courses and distances has no application. In the first place, the iron pipe claimed to have been set by the common grantor is not a monument in the true sense of the word, for it was not designated nor referred to in the description of the grant.

The rule is applicable to clarify and effectuate the intention of the grantor as expressed in the deed. *Fullam* v. *Foster,* 68 Vt. 590, 594, 35 Atl. 484; *Sowles* v. *Butler,* 71 Vt. 271, 276, 44 Atl. 355; *Neill* v. *Ward,* 103 Vt. 117, 147, 153 Atl. 219. Here the markers which the defendants rely on were not mentioned in the description. Without such authentication they have no force to dispute courses and distances established in the instrument of conveyance. *Whitman* v. *Dailey,* 95 Vt. 454, 459, 115 Atl. 559; 6 Thompson, Real Property, §3045 (1962 Replacement); Tiffany, Real Property §994 (3rd Ed.).

The fact that the south line claimed by the defendants tends to follow a natural landmark, in this instance the gully referred to in finding 4, is of little consequence. The gully is not named in the description. Had it been the grantor's intention that this depression should mark the south line, rather than the compass direction specified, such intent could have been easily expressed, even by an inexpert draftsman. Without some declaration to this effect in the instrument, the chancellor was at liberty to disregard it.

■ Lastly, the defendants seek to justify their encroachment on the plaintiffs' land by invoking the doctrine of acquiescence and estoppel. As to each of these contentions the findings are silent, and the facts as reported by the chancellor are not challenged. It is sufficient to say that acquiescence in a wrong line will not establish it as the true boundary unless the demands of the statute of frauds or adverse possession are met. *Amey* v. *Hall,* 123 Vt. 62, 66, 181 A.2d 69; *D'Orazio* v. *Pashby,* 102 Vt. 480, 497, 150 Atl. 70; *Camp* v. *Camp,* 59 Vt. 667, 668, 10 Atl. 748. If acquiescence was present, it was not claimed to be by written agreement, nor has it endured for the required length of time. Acquiescence on the part of the plaintiffs might have some evidentiary value. But if compliance there was, it apparently was of insufficient weight in the mind of the chancellor to override the boundary as described in the deed. *Brown* v. *Derway,* 109 Vt. 37, 43, 192 Atl. 16.

■ There is nothing in the findings to indicate the defendants' intrusion on the plaintiffs' land was done in reliance on any inducement extended by the plaintiffs. Without the presence of these factors, the assignment of error on the doctrine of estoppel must fail. *West River Power Co.* v. *Bussino,* 111 Vt. 137, 139, 11 A.2d 263; *Weinberg*

v. *Norton,* 107 Vt. 279, 292, 178 Atl. 913; see also, 6 Thompson, Real Property, §3037 (1962 Replacement) ; 4 Tiffany, Real Property, §1235 (3rd Ed.).

*Decree affirmed.*