## Cross-Abbott Company v. Howard's, Inc.

[ 207 A.2d 134 ]

December Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 2, 1965

*Black & Plante* and *Frank G. Mahady* on the brief for plaintiff.

*Davis, Martin & Free* for defendant.

**Keyser, J.** The plaintiff seeks by its bill in chancery to permanently restrain the defendant from using or maintaining any trading stamp plan in its retail store other than the stamp plan of Top Value Enterprises, Inc., or other plan approved by plaintiff. After hearing, the chancellor made findings of fact and entered a decree dismissing plaintiff's bill of complaint. From this action plaintiff has appealed.

The findings show these parties entered into a written contract, called an operating agreement, on July 27, 1960. The plaintiff is a wholesaler of foods and non-food commodities. The defendant owns and operates a retail store and market in Barre Town, selling foods and non-food commodities of the type dealt in by the plaintiff. This operating agreement obligated the defendant to buy from the plaintiff, all food and non-food commodities, with certain exceptions, which it required for resale in the ordinary course of its store business. The plaintiff agreed thereby to sell the same to the defendant and in addition agreed to provide promotional, supervisory, accounting and other services to the defendant. Previously, on March 10, 1960, the plaintiff had entered into a contract with Top Value Enterprises, Inc., the purpose of which was to promote and increase its business by the use of trading stamps known as "Top Value Stamps." The plaintiff supplies these stamps it thus acquired under said contract to the defendant and its other retail establishments making a profit thereon. These trading stamps are given by the retail store as a bonus to its customers for their business, the number being based upon the dollar value of the goods purchased. The defendant at first obtained from the plaintiff, and used in its store, the Top Value stamps. In June 1963, defendant began to use an additional and different kind of trading stamps, called "S & H Green Stamps." Defendant gave these green trading stamps to its customers if they preferred them to the "TV stamps," but has continued to use and issue to its customers both kinds of stamps.

The appeal presents one basic question, the determination of which will control the disposition of the case. It is—Does the operating agreement entered into by these parties prohibit the defendant from the use of a trading stamp plan other than the Top Value Enterprises, Inc., stamp plan not approved by the plaintiff? The plaintiff urges that clauses 2, 3, 7, 9, 15 and 16 of the operating agreement establish its position that the agreement prohibits the defendant from using trading stamps other than "Top Value" supplied by the plaintiff.

It is well established in construing written instruments to ascertain the intention of the parties that courts must give effect to every part and from the parts form a harmonious contract. *Jackson* v. *Rogers,* 120 Vt. 138, 141, 134 A.2d 620; *Abraham* v. *Dougherty,* 115 Vt. 71, 51 A.2d 133. Words employed in a contract will be assigned their common meaning and usage where they can be sensibly applied to the subject matter. *Texaco, Inc.* v. *Rognow,* 150 Conn. 401, 190 A.2d 48. However, if the language of the instrument is clear and unambiguous its intent cannot be altered by evidence of extraneous circumstances; and in such situation the instrument is to be interpreted by its own language, and the understanding of the parties must be deemed to be that which their own written instrument declares. *Stratton* v. *Cartmell,* 114 Vt. 191, 194, 42 A.2d 419. See, also, *Haklits* v. *Oldenburg,* 124 Vt. 199, 202, 201 A.2d 690; *Feinstein Bros.* v. *Hotte Granite Co.,* 123 Vt. 167, 170, 184 A.2d 540.

The plaintiff claims trading stamps are a non-food commodity and thus embraced within the provisions of clause 2 of the agreement. We do not agree with this contention of plaintiff. The word "commodity" is defined as everything movable that is bought and sold, *Peterson* v. *Currier,* 62 Ill. App. 163; any article that is bought and sold, Webster's Unabridged Dictionary, 2d Ed. In *Sperry & Hutchinson Co.* v. *Mechanic's Clothing Co.,* 135 F. 833, 834, the court said, "A trading stamp is not ordinary property. It is *sui generis.* . . . In the transaction between the company and the merchant, the stamp, once issued, represents so much advertising furnished and paid for. Once issued by the merchant it is *functus officio* as a token of the sale and use of so much advertising. The trading stamp, when issued, represents a closed transaction between the merchant and the company, as well as an outstanding obligation to redeem the stamp." Stamps given a customer with cash purchases of merchandise

are his reward for paying cash and constitute a "discount for cash." *Sperry & Hutchinson* v. *Margetts*, 25 N.J. Super. 568, 96 A.2d 706, 712. A trading stamp is a stamp which entitles a buyer of goods to obtain from some person other than the seller some article of merchandise in addition to that sold. *State* v. *Dalton*, 22 R.I. 77, 46 Atl. 234. The stamp represents the right to redeem for articles which the stamp company sells at a stipulated number of stamps and is a chose in action. *Sperry & Hutchinson Co.* v. *Hertzberg*, 69 N.J. Eq. 264, 60 Atl. 368. It is well known that the trading stamp is a device to attract customers or to induce those who have bought once to buy again and is a promotional scheme. These stamps are not an item sold by the merchant as a part of his stock in trade. Rather, they are issued as a premium to the customer by the merchant without charge, the number of stamps issued being based upon the percentage of ·the cash purchases. Patently, trading stamps are not something that the defendant "required for resale" in the ordinary course of its retail business.

The plaintiff takes the position that it *sells* the trading stamps to its retail grocer customers. This, however, is not the fact. A sale is a contract whereby the ownership of property is transferred from one person to another for a consideration. *State* v. *Weissman*, 73 N.J. Super. 274, 179 A.2d 748. A sale is defined in the Uniform Sales Act, 9 V.S.A. §1501 (b), to be—"A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." By the agreement between Top Value Enterprises, Inc., and the plaintiff, the latter is only licensed and authorized to use with its retail grocer customers, the licensor's Top Value Stamps as symbols or tokens in connection with such retail businesses. This agreement further provides in part that "the property in and title to said Top Value Stamps . . . shall remain in Licensor, and shall, in no event pass to Licensee, or any other person, firm or corporation." These provisions can leave no doubt that the trading stamps are not something which is subject to being bought and sold. Rather it is the advertising and the inducement to purchase merchandise at retail, which is bought. The plaintiff by its very agreement with Top Value Enterprises, Inc., neither buys the trading stamps nor does it ever acquire title to them. Under these circumstances, there can be no sale of the stamps by the plaintiff to the defendant as it claims. Clearly, the stamps are not the subject of resale by the defend-

ant's store or a non-food commodity, under clause 2 of the operating agreement. Clause 3 deals with specific exceptions granted the defendant for certain food products and drugs which it is permitted to purchase elsewhere but trading stamps are not mentioned. This clause relates entirely to commodities which are subject to purchase and sale. Since stamps are outside that category, the clause has no significance to solving the question presented. Clause 7 requires defendant to use its store premises exclusively for conducting business as a Red and White Food Market, using the plaintiff as its only food and non-food supplier. Plaintiff urges this prohibits defendant from using its premises for the distribution of trading stamps not supplied by plaintiff. This clause must be read in conjunction with clause 2. It simply means the food and non-food commodities which defendant is required to purchase from the plaintiff for resale in the ordinary course of its business. To adopt plaintiff's interpretation of this clause is to read into the agreement something that is not expressed therein either in fact or by inference. This the court may not do. *Town of Troy* v. *American Fidelity Company*, 120 Vt. 410, 418, 143 A.2d 469.

A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument. *Texaco, Inc.* v. *Rognow, supra.*

What we have previously said applies with equal force to the phrase in clause 9 "all other commodities sold by the wholesaler." Clause 15 of the agreement provides: "The Retailer agrees to operate said Retail Food Stores in accordance with the plans, programs, and suggestions of the Wholesaler." By clause 16 the defendant agreed "to join any group advertising on a National and local level including newspaper, magazine, radio, television, window poster, demonstration display, material coupon and special pack activities and promotions." The court found, Finding No. 23, that the defendant, "has at all times operated in accordance with the plans, programs and suggestions of Cross Abbott Co., and in addition has instituted additional advertising and promotional features on its own, including the offering of S & H Green Stamps. . . ." The plaintiff claims this finding is in no way supported by the evidence but does not point out wherein it fails to do so except the evidence that defendant has distributed S & H Green Stamps which it says is a breach of contract. The evidence and Finding 10, not excepted to, establishes that the defendant

is distributing "TV Stamps" under plaintiff's promotional plan and has never rejected it. As we have noted, plaintiff claims the agreement prohibits defendant's use of any kind of trading stamps other than TV stamps. The agreement contains no prohibition or restrictive clause or covenant which requires the defendant to adopt only and exclusively the promotional activities of the plaintiff. The agreement between plaintiff and the stamp company does provide that the plaintiff as licensee was to "obligate its retail grocer customers listed herein, to not issue, use or give to customers any trading stamps or similar device, which may cause confusion with Licensor's Plan or impair the good will of the Licensor." There is no such restrictive clause referred to or contained in the agreement between plaintiff and defendant even though plaintiff's obligation in this respect was entered into over four months previously. The defendant is not a party to the agreement between plaintiff and the stamp company and the evidence is void of any knowledge by the defendant that such contract existed. The defendant in this situation cannot be obligated by plaintiff's contract with the stamp company.

Courts of equity should always proceed with caution in giving effect to contracts which impose a restraint by restrictive provision, *Dyar Sales & Mchy. Co.* v. *Bleiler,* 106 Vt. 425, 432, 175 Atl. 27. Such provisions restricting the liberty of doing business must be written into a contract with clear and unambiguous language and must not be left to inference or interpretation. A covenant in restraint of trade must be sufficiently specific to permit determination of whether its effect is reasonable. 17 C.J.S. Contracts, §256, citing *Hoff* v. *Leneerman,* 143 Ill. App. 170, and *Friedman* v. *Friedman,* 209 Ga. 653, 74 S.E.2d 860. In the latter case the court held an employee contract was fatally defective and void because it was indefinite in the description of the prohibited business and in that respect was unreasonable. In *Shute* v. *Heath,* 131 N.C. 281, 42 S.E. 704, the court held the contract void for indefiniteness as to territory. Valid agreements in restraint of trade must be established by clear and satisfactory proof in order to justify a court in restraining their breach by injunction. There must be no doubt or uncertainty in regard to their terms or the consideration upon which they are founded. *Hall's Appeal,* 60 Pa. St. 458, 100 Am. Dec. 584.

This court must affirm the findings if there is any credible evidence to support them, and must construe those findings so as to support the judgment, if possible. *deNeergaard* v. *Dillingham,* 123 Vt. 327, 330, 187 A.2d 494. The evidence reasonably supports the material findings of fact which establish that under the operating agreement of the parties, the defendant is not in violation of its terms.

The plaintiff also excepted to Findings of Fact Nos. 15, 20 and 23 which have to do with mutual profit to the parties resulting from the use and issuance of S & H Green Stamps by defendant. Our disposition of the case renders these findings immaterial and consideration of such exceptions unnecessary. *Peterson* v. *Moulton,* 120 Vt. 439, 144 A.2d 717. The decree dismissing plaintiff's bill of complaint is without error.

*Decree affirmed.*