Mahoney v. Tara, LLC, No. S1543-07 CnC (Crawford, J., Oct. 5, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Chittenden Unit** | **Docket No.:  S1543-07 CnC** |

**J. DANIEL MAHONEY, et al.,**
    **Plaintiffs**


   **v.**

**TARA, LLC,**
    **Defendant**


### DECISION ON CROSS
### MOTIONS FOR SUMMARY JUDGMENT


This case is before the court on remand from the Vermont Supreme Court. *Mahoney v. Tara, LLC*, 2011 VT 3, 189 Vt. 557 (mem.).  The parties to this action dispute the location of a boundary separating two adjoining shore-front properties on Lake Champlain.  By their Amended Complaint, Plaintiffs seek to establish the boundary though claims of (1) adverse possession; (2) acquiescence; and (3) prescriptive easement.  Defendant Tara, LLC has moved for summary judgment on plaintiffs' claims of adverse possession and acquiescence, asserting that the disputed property is shielded from these claims because it was used for a public, pious, or charitable purpose.  Plaintiffs have filed their own motion for summary judgment seeking to establish that claims of acquiescence can be made against a property regardless of its use.


Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).  The party moving for summary judgment has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists. *Price v. Leland*, 149 Vt. 518, 521 (1988).  However, a party may not "rest on allegations in the pleadings to rebut credible documentary evidence or affidavits." *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 266 (1981).  "Instead, the nonmoving party 'must come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts in issue.'" *Clayton v. Unsworth*, 2010 VT 84, ¶ 16, 137 Vt. 508 (citing *Alpstetten Ass'n v. Kelly*, 137 Vt. 508, 514 (1979)). ).  Where both parties seek summary judgment, "each must be given the benefit of all reasonable doubts and inferences when the opposing party's motion is being evaluated." *Northern Sec. Ins. Co. v. Rosenthal*, 2009 VT 83, ¶ 4, 186 Vt. 578 (mem.) (citation omitted).


### FACTS


Plaintiffs and Defendant own adjacent parcels of land along Lake Champlain in Colchester, Vermont.  Plaintiffs' family began renting a property on the lake (the Mahoney Lot)

in 1949 and eventually purchased it in 1976.[1] Throughout their lease and ownership of the Mahoney Lot, and by the terms of their deed, plaintiffs enjoyed the use of approximately seventy-five feet of lake frontage.

The adjacent lot to the northeast (the Tara Lot) was owned by Vermont Catholic Charities, Inc. (VCC) from 1958 until 2006. During this time period, the Tara Lot was leased to Camp Tara, Inc. which operated the property as a secular summer camp.[2] In 2006, the property was sold to Defendant Tara, Inc. (Tara). The following year Tara filed an application to subdivide the Tara Lot. This application included a survey showing the Tara Lot's southerly boundary line cutting plaintiffs' beach in half.

Tara has submitted several affidavits in support of its motion for summary judgment. The Vicar General and Chancellor of the Roman Catholic Diocese of Burlington, Vermont, John McDermott, states by affidavit that "as demonstrated by this documentation and my personal knowledge, the Camp Tara property was used and operated for charitable purposes from 1959 through 2003, always enrolling and serving children without regard to religion, race, or creed." Aff. of John McDermott ¶ 4 (dated May 4, 2012). The attached documents were official records demonstrating that the summer camp served underprivileged children in the years 1959, 1968, 1978, 1988, and 1998.

The Controller and Director of Professional Services of Vermont Catholic Charities, Denise Payea, also asserted by affidavit that "as demonstrated by this documentation and my personal knowledge, the Camp Tara property was used and operated for charitable purposes from 1959 through 2003, always enrolling and serving children without regard to religion, race, or creed." Aff. of Denise Payea ¶ 4 (dated May 4, 2012). Attached to her affidavit were several letters from 1957–1959, the articles of in corporation of Camp Tara, Inc., leases between VCC and Camp Tara, Inc. dated 1958 and 1982, a press release from 1967, and camp reports from 1970 and 1971. Ms. Peyea also explains that she spent two summers working at the camp during college. *Id.*

The Executive Director of Camp Tara from approximately 1977–1981, Paul Rabidoux, asserts by affidavit that "Camp Tara was operated on a not-for-profit basis." Aff. of Paul Rabidoux ¶ 3 (dated April 20, 2012). He also states that "during [his] tenure as executive director, Camp Tara operated a summer camp for underprivileged children, without regard to a child's religion. . . . No tuition or other fees were charged to campers; the entire budget for the Camp was funded by [VCC]." *Id.* ¶ 5. And that "[s]o far as I can determine, Camp Tara operated substantially the same way and used the same property prior to my term as executive director as it did while I was the executive director." *Id.* ¶ 13.

The plaintiffs have summarily denied many facts asserted by plaintiff on the grounds that defendant failed to provide sufficient evidentiary support and that the evidence does not establish the use of the camp for the entire period between 1958 and 2006. In a sur reply, plaintiffs claim

---

[1] Plaintiffs' Amended Complaint asserts that the predecessors of the Mahoney family claimed ownership of the disputed property since 1939 and that any period of acquiescence also started in 1939.

[2] The camp was apparently known as Camp Iroquois prior to Camp Tara.

that the property was not used for charitable purposes during the 44 weeks per year the camp was not in session. Aff. of Patrick Mahoney ¶ 11 (dated July 30, 2012).

## DISCUSSION

Defendant has moved for summary judgment on plaintiff's claims of adverse possession and acquiescence, arguing that these causes of action are unavailable against property dedicated to a public, pious, or charitable use. Plaintiffs' claim relating to a prescriptive easement is not addressed by the pending motion for summary judgment.

### I.        Adverse Possession

"[T]o prove adverse possession, one must demonstrate fifteen years of open, notorious, hostile, and continuous possession." *In re Estates of Allen*, 2011 VT 95, ¶ 14. In other words, the adverse possessor "must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest." *Barrell v. Renehan*, 114 Vt. 23, 29 (1944).

Vermont law exempts from claims of adverse possession "lands given, granted, sequestered, or appropriated to a public, pious or charitable use." 12 V.S.A. § 462. In determining whether an entity qualifies for the § 462 exception, the court applies the three part test articulated in *American Museum of Fly Fishing v. Town of Manchester*, 151 Vt. 103 (1989). *MacDonough-Webster Lodge v. Wells*, 2003 VT 70, ¶¶ 11–13, 175 Vt. 382. Under this test, to qualify for the charitable use exemption from claims of adverse possession the property must meet three criteria: "(1) the property must be dedicated unconditionally to public use; (2) the primary use must directly benefit an indefinite class of persons who are part of the public, and must also confer a benefit on society as a result of the benefit conferred on the persons directly served; and (3) the property must be owned and operated on a not-for-profit basis." *Am. Museum of Fly Fishing*, 151 Vt. at 110.

Plaintiffs argue that property must be tax exempt to qualify for the protection from adverse possession afforded by § 462, citing *Wells*, 2003 VT 70. Building on this, plaintiffs argue that the Tara Lot is not tax exempt under 32 V.S.A. § 3832, which limits tax exemption for properties owned by religious societies to certain uses such as church buildings and parsonages. Plaintiffs misinterpret the holding in *Wells*.

In *Wells*, the Vermont Supreme Court explained that the language, purpose, and date of passage of § 462 and § 3802(4) are nearly identical. *Wells*, 2003 VT 70, ¶ 12. The Court then reasoned that the same test—the *Fly Fishing* test—should be used to determine whether a property qualifies for the charitable use exception under both statutes. *Id*. ¶¶ 11–13. It is important to recognize that the Court neither applied other tax provisions nor indicated that the entire body of statutes governing tax exemption should be considered in § 462 analysis. It simply adopted a test which had already been developed to determine whether a property was held for a public, pious, or charitable use. There is no basis to import other provisions of Title 32

3

into the § 462 analysis, and the exception to the taxation exemption found in § 3832 is not relevant to this case.

In reaching this conclusion, the court has considered the following points:

In remanding this case, the Vermont Supreme Court directed the trial court that "the focus of the exemption [provided by section 462] is not on lands *held* by a public pious or charitable user . . . but rather on 'lands given, granted, sequestered or appropriated to a public pious or charitable *use*.'" *Mahoney*, 2011 VT 3, ¶ 10 (quoting 12 V.S.A. § 462). The trial court erred the first time in concluding its analysis with the determination that the land was owned by a religious organization. Ownership, however, is not the test for purposes of § 462—use is the test.

In the current motions, it is the plaintiffs—the private camp owners—who now focus on the issue of ownership by a religious society. They turn to 32 V.S.A. § 3832(2), which greatly limits tax exemption for properties owned by religious societies. Only a few uses qualify for tax exemption. These include church buildings, parsonages and convents, hospitals and homes for the poor or disabled, and similar traditional institutions. For purposes of § 3832, the nature of the organization that holds title is critical to the inquiry. See *Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica*, 2005 VT 16, ¶ 29, 178 Vt. 35 (excluding property from exemption because it was owned by a "religious society" and did not fall within the specific uses set out in 32 V.S.A. § 3832(2)).

In contrast, § 462 provides protection against adverse possession to all property held for three broad types of uses: public, pious or charitable. There is no further limitation of the type imposed by § 3832(2) on "religious societies." In giving meaning to the words "public, pious or charitable," the *Wells* decision adopted the *Fly Fishing* test, but it did not adopt the entire structure of municipal tax exemption.

The difference between § 462 and § 3832(2) opens the possibility of a mildly anomalous result: property owned by a "religious society" might be protected from adverse possession but still subject to local property tax. The justification for such a difference lies in the different reasons for the two provisions. Property put to a public, pious or charitable use may be less guarded by its communal owners against the threat of adverse possession than private land. See *Wells*, 2003 VT 70, ¶ 10 ("Land qualifying for the exception lacks the protection of a discrete individual or group's long term interest in guarding the property against encroachments.").

Section 3832(2), on the other hand, protects the tax rolls, not the property owner. It is a pocket-book provision. Ownership of property by a religious society is not sufficient; the property must be used for specific purposes such as a house of worship or certain forms of charitable activity. The reasons for treating pious organizations less favorably than secular charities are historical and beyond the scope of this decision. The issue for this ruling is that the membership of a religious society has the same need for protection against encroachment by its neighbors as any other charitable organization or public body. The court will not limit the statutory protection for "pious use" in § 462 by the additional—and very different—limitation for "religious societies" that appears in § 3832(2).

The court now turns to the status of the Tara Lot while owned by VCC, and the application of the *Fly Fishing* test. Defendant has put forth evidence that the property was owned and operated on a not-for-profit basis for the purpose of benefitting under-privileged youth. It asserts that the property therefore meets the *Fly Fishing* test, and is protected from claims of adverse possession by § 462.

Plaintiffs summarily deny many of the facts asserted by Tara, and question whether the summary judgment record reflects the use of the property for the entire period from 1958 until 2006. Plaintiffs also dispute whether the "primary use" of the property—factor two of the *Fly Fishing* test—was to benefit the public. Specifically, Plaintiffs Patrick Mahoney asserts that "rentals by private groups for events such as weddings and conferences were a normal occurrence when Camp Tara was not in session." Aff. of Patrick Mahoney ¶ 11 (dated July 30, 2012). There is a dispute of fact relating to the primary use of the property which cannot be resolved on summary judgment. Defendant's motion on this issue is therefore **DENIED**.

The court also notes that plaintiffs' claim of adverse possession runs from 1939 until 2006. The VCC did not obtain the property until 1958. Therefore, plaintiffs may demonstrate that they satisfied the elements of adverse possession prior to the VCC's ownership and avoid the application of § 462.

## II. Acquiescence

Defendant argues that § 462 bars claims of acquiescence against property used for a public, pious, or charitable purpose in the same way that it bars claims of adverse possession. The court previously determined that "the acquiescence claim cannot survive because it also depends on completion of the 15-year period in § 501, made inapplicable by § 462." Entry (dated June 5, 2008) (Katz, J.). On appeal, the Vermont Supreme Court specifically declined to consider this issue. *Mahoney*, 2011 VT 3, ¶ 13. Plaintiffs maintain that § 462 does not apply to claims of acquiescence.

"A boundary is established by acquiescence when there is mutual recognition of a given line by adjoining landowners, and continuous possession by one to the line for a fifteen-year period, which is the same as the period required to establish ownership by adverse possession." *Okemo Mountain, Inc. v. Lysobey*, 2005 VT 55, ¶ 14, 178 Vt. 608 (mem.) (citations omitted). "[A]cquiescence in a wrong line will not establish it as the true boundary unless the demands of the statute of frauds or adverse possession are met." *Haklits v. Oldenburg*, 124 Vt. 199, 204 (1964). "[A] boundary line established by acquiescence . . . will give a perfected title by adverse possession." *Beresford v. C.W. Gray and Sons, Inc.*, 138 Vt. 308, 309 (1980).

In Vermont there is little, if any, distinction between acquisition through adverse possession and acquiescence. As explained by Powell on Real Property, "those states acknowledging that adverse possession's 'hostility' requirement may be fulfilled innocently sometimes admit no real distinction between the two doctrines." 9 R. Powell, Powell on Real

Property § 68.05[3][c] (1999) (citing *Beresford*, 138 Vt. 308; *Haklits*, 124 Vt. 199).[3] Indeed, the Vermont Supreme Court specifically stated that a boundary cannot be set by acquiescence unless the elements of adverse possession are met. *Haklits*, 124 Vt. at 204.

Plaintiffs assert that the Vermont Supreme Court has determined a boundary by acquiescence despite finding that the elements of adverse possession did not exist, citing *Brown v. Derway*, 109 Vt. 37, 43 (1937). The Court in *Brown* was called on to determine the boundary between two parcels of land.[4] The disputed boundary was described by deed as terminating at an oak tree. *Id.* at 40. The tree was no longer in existence at the time of the action, and the Court held that the former location of the oak tree was a question of fact to be proved at trial. *Id.* at 44. With regard to acquiescence, the Court stated that "acquiescence in a wrong line will not establish it as the true line, such acquiescence for a long period of time is evidence that such line is the true line." *Id.* at 43. The ruling referred only to proper evidence at trial, and did not purport to determine a boundary by acquiescence.

This court can find no Vermont case which holds that a party may acquire property by acquiescence without meeting the elements of adverse possession. It appears that acquiescence is merely a special form of adverse possession. Because of this, the court is convinced that claims of acquiescence are controlled by § 462 in the same way as claims of adverse possession.

Finally, like the claim of adverse possession, plaintiffs may establish that the disputed boundary was established by acquiescence prior to VCC's ownership of the Tara Lot.

## CONCLUSION

Pursuant to 12 V.S.A. § 462, property is protected from claims of adverse possession and acquiescence if it is dedicated to a public, pious, or charitable use.

To determine whether the Tara Lot was dedicated to a public, pious, or charitable use, the court will apply the *Fly Fishing* test and disregard other tax provisions.

Because there are material disputes of fact regarding the primary use of the Tara Lot between 1958 and 2006, the court cannot determine whether the *Fly Fishing* test is met, and defendant's motion for summary judgment on plaintiffs' claims of acquiescence and adverse possession is **DENIED**.

---

[3] As explained in *Jarvis*: "Hostility, when used in the context of adverse possession, does not require the presence of ill will toward the actual owner nor destructiveness toward the land. Rather, what is required is that the adverse possessor intends to claim the land and treat it as his own." 155 Vt. at 641.

[4] Coincidentally, one parcel was owned by a church and housed a summer camp. *Brown* 109 Vt. at 39.

Plaintiff's cross-motion for summary judgment which raises the same issues is also DENIED.


DATED                     at Burlington, Vermont,

_____
Geoffrey Crawford
Presiding Judge